NOVEMBER TERM, 1870. 435

The City of Columbus v. The Hydraulic Woollen Mills Company.

THE CITY OF COLUMBUS v. THE HYDRAULIC WOOLLEN MILLS COMPANY.

RE-TRAINING ORDER.—*Judge of Common Pleas.*—The judge of the common pleas court may grant a restraining order in vacation, without notice, upon emergency, in a cause pending in the circuit court.

SAME.—Such order may only be granted until notice can be given and a hearing had thereon; and where such an order was granted, to expire on the second day of the next term of the circuit court, which would be a period of six months;

*Held,* that the period was too long.

CITY.—*Street Improvement.— Change of Grade.—Statute Construed.*—The provision of the twenty-seventh section of the act for the incorporation of cities (Acts 1867, p. 33), that when the grade of a street has been once established, it shall not be changed without first assessing and tendering the damages occasioned by the change, refers to damages as well to property outside of the city limits as to that inside.

SAME.—*Injunction.*—A hydraulic company operated a woollen mill propelled by water supplied by an artificial race, the water from which was used also in coloring the goods manufactured, pure water being required for that purpose. A city incorporated under said act of 1867 was rapidly cutting a ditch for the draining of its streets, to discharge into said race, which would so contaminate the water thereof with filth as to make it unfit for coloring; and this would be accomplished in two or three days, if not arrested; and it would also carry sand into said race, obstructing the flow of water to the mill. Said city was making said ditch as a part of the work of grading a certain street according to a new and changed grade thereof, a different grade having been previously established, and the damages to said company resulting from such change of grade had not been assessed or tendered. Said race at the point of intersection with the proposed ditch was outside of the city, its margin being the boundary of the city.

*Held,* that said company was entitled to an injunction to prevent the city from cutting said ditch into the race (the majority of the court basing this conclusion on said provision of section 27 of the act of 1867; ELLIOTT, J., holding that the fact that the city was changing the grade of the street did not affect the question, but that the city had no authority or right to conduct the drainage of its streets into the race, the private property of said company, and thereby destroy the use for which it was constructed, nor could such power be conferred except by the exercise of the right of eminent domain).

APPEAL from the order of the judge of the Bartholomew Common Pleas.

FRAZER, J.—The power of the common pleas judge in

vacation to grant a restraining order in a cause pending in the circuit court is questioned. It was certainly competent for the legislature to confer this power, and as a matter of convenience quite necessary that it should be done. The judge of one court is often absent or lives at a distance, while the judge of the other is at hand or easily accessible. No conflict of jurisdiction could arise, for it would not be a case in which one court was interfering with the process of another court, as in *The Indiana, &c., R. R. Co.* v. *Williams,* 22 Ind. 198. The judge of the common pleas is not in vacation the court of common pleas, and so of the circuit judge. But each exercises in vacation whatever power in this respect is conferred by statute as an officer clothed with the special authority, having for that purpose the power which the proper court would have in term, and being, in a certain limited sense, that court for the time being. A master in chancery was not the chancellor or the court, and yet for convenience he had, in vacation, under our former laws, this very authority. Indeed, at one time it was conferred upon the clerk. We think the statute confers the power. 2 G. & H. 131, *et seq.* There is no reason for giving to the language employed such a construction as will confine the power of the judge in vacation to causes in the court of which he is judge. No such restriction is either expressed or implid in the terms employed, unless it may be as to the granting of temporary restraining orders without notice, upon emergency. The word "court" only is there employed, and not "court or judge," as in the former part of the same section (139). But if the term "court" is to be taken literally, then there is no power in vacation, without notice, to grant restraining orders; for in a strictly literal sense, the judge in vacation is not the court, though for certain purposes he possesses its powers, and is for that reason called a *court.* This term must here be interpreted to mean as well a judge in vacation as the court in a proper sense, to avoid a dilemma which the legislature never intended. It cannot be supposed that it was designed to con-

The City of Columbus *v.* The Hydraulic Woollen Mills Company.

fine the power of granting restraining orders, without notice, upon sudden emergency, to the courts in term.

In this case, a restraining order, without notice, was granted in vacation, on the 12th of June, 1869, to expire on the second day of the next term of the circuit court, which would be a period of more than six months. This was in plain violation of the statute, and for that reason there must be a reversal. By sec. 139 of the code it is provided that the order shall only be granted until notice can be given, and a hearing had thereon. A reasonable time in which to give the notice must of course be allowed, but the period of six months is entirely too long.

The case is also argued upon the merits, as the facts are alleged to be by the complaint. Briefly, this is the case: the plaintiff operates a woollen mill propelled by water supplied by an artificial race, the water from which is used also in coloring the goods manufactured, pure water being required therefor. The defendant is rapidly cutting a ditch for the draining of its streets, to discharge into the race, which will so contaminate the water thereof with filth as to render it unfit for use in coloring, and this will be accomplished in two or three days, if not arrested; that it will also carry sand into the plaintiff's race, obstructing the flow of water to the mill; that the defendant, an incorporated city, is making said ditch as a part of the work of grading Harrison street, according to a new and changed grade thereof, a different grade having been previously established; and that damages to the plaintiff resulting from such change of grade have not been assessed or tendered. The race at the point of intersection with the proposed ditch is outside of the city, its margin being the boundary of the city.

The statute provides that the common councils of cities shall have exclusive power over the streets thereof. Acts 1867, p. 63, sec. 61. But the twenty-seventh section of the same act declares that when the grade of a street has been once established, it shall not be changed without first assessing and tendering the damages occasioned by the change.

Does this refer to damages to property *outside* of the city limits? The language is certainly broad enough to protect property without as well as within from the injury, often very serious, resulting from such changes. We perceive no good reason for making any distinction, and none therefore for a construction which will circumscribe the language of the legislature, limiting the natural import of it so as to deny to property without, that protection which is given to property within the city. The enactment, in its broadest scope, is eminently just, and it is the opinion of the majority of the court that the appellee is protected by it.

Reversed, with costs, and remanded for further proceedings.

Elliott, J.—I concur in the opinion of Frazer, J., in the reversal of the restraining order granted by the judge in vacation, for the reason stated. And I also concur in the conclusion that the complaint presents facts sufficient to authorize an injunction, but for a very different reason from that stated in the opinion. The complaint shows that the race, into which the city was constructing a sewer for the purpose of drainage, is the private property of the plaintiff, constructed for the purposes stated, and is outside of the city limits, and I hold that, independent of the question of a change of grade of the streets, the city has no authority or right to conduct the drainage of the streets into the race, and thereby destroy the use for which it was constructed. It is true, that the city has exclusive jurisdiction over the streets and alleys within the corporate limits; but that does not confer on it authority to gather the drainage of the streets into a sewer and discharge it upon the private property of a person outside of the limits of the city, to his injury. No such power is conferred by the city charter, nor could it be except by the exercise of the power of eminent domain, to take private property for public use; and in such cases the damages must first be assessed and paid before the property can be appropriated. I cannot see

therefore, that the fact that the city was changing the grade of the street has anything to do with the question.

Indeed, if the race were within the city limits, I should not be prepared to hold that the city, by virtue of its jurisdiction over the streets, could use the race as an outlet to the sewerage of the city to the injury of the plaintiff, without compensation. It would be virtually taking or appropriating private property to the public use, which can only be done upon the assessment and payment of the damages.

*S. Stansifer* and *F. Winter*, for appellant.

*F. T. Hord*, for appellee.