## BARNEY WINN v. VILLAGE OF RUTLAND.

*Charge. Practice. Incorporated Village. Liability to Action for Improper Construction of Sewers. Damages. Right of Eminent Domain. User.*

General propositions of law, however correct in form and substance, are not to be embodied in the charge, unless involved in the cause. Thus, in case against an incorporated village for negligence in the construction of a sewer through plaintiff's premises, and·for neglect in keeping it in repair, whereby sewage overflowed upon plaintiff's premises, defendant requested the court to charge in effect that defendant was not liable for faults in the general system of sewerage, or in the plan and location of the sewer in question, but the court refused so to charge. *Held*, no error.

The defendant was by its charter empowered to make and maintain sewers. The charter having been sought and accepted with a view to the realization of benefits to the inhabitants of the village and not to the discharge of a public duty, it was *held* that, the charter power being proprietary in its character, the defendant was by implication bound so to exercise it as to work no unnecessary injury to persons or property thereby affected ; and that for negligence or unskilfulness in the construction of a sewer, or want of care in keeping it in repair, an action would lie at suit of any person thereby injured.

There was evidence tending to prove that plaintiff had suffered no greater damage than he would have suffered if the sewer had not been made; and question was made whether in such circumstances plaintiff could recover, even if the sewer was negligently and unskilfully made. *Held*, that the question of defendant's liability would not be thereby affected, at all events not if plaintiff had a remedy for damages that would otherwise have ensued of which he was deprived by the action of the defendant.

The flooding of land with sewage so as to create a nuisance thereon and so·as effectually to impair its usefulness, is a taking of it within the purview of the constitutional inhibition of the taking of private property for public use without compensation.

The surface water from a considerable part of the village originally flowed through plaintiff's premises in a small natural watercourse. In 1869 defendant made a sewer emptying into that watercourse above plaintiff's premises. In 1872 defendant made the sewer complained of, extending through plaintiff's premises and along that watercourse. Defendant offered to prove that sewage ran in the watercourse prior to the making of the sewer complained of, and that in times of high water

61

plaintiff's premises were overflowed. *Held,* that the emptying of sewage into the watercourse, &c., prior to 1872, afforded no excuse for allowing it to escape upon plaintiff's premises after that time, and that the evidence was inadmissible.

The court charged that the location of the sewer was an element to be considered in measuring the care and skill required of defendant in its construction. *Held,* no error.

CASE for negligently permitting the overflow of sewage onto the plaintiff's premises. In the first count the plaintiff alleged that he was the owner of a house-lot and house on Howe street in the village of Rutland, and that the defendant, being authorized to construct sewers for the accommodation and convenience of the inhabitants of said village, so negligently constructed a sewer through his lands that the contents thereof were emptied upon his premises, doing him and his property great damage. The second count alleged negligence in keeping the sewer in repair, whereby like damage followed. Plea, general issue, and trial by jury, September Term, 1878, BARRETT, J., presiding.

The plaintiff introduced testimony tending to prove that prior to 1869, the surface water from all that part of the village that lay north of Washington street and east of the railroad, naturally flowed into the lower part of West street, and thence westward through a culvert under the railroad and along a small natural watercourse to and through the premises here in question, which were then owned by Florence Crowley, and across lands of Patrick Toohey and certain other lands and certain streets to East Creek; that in 1869 the trustees of the village, acting under the act of incorporation and several acts amendatory thereof, which were introduced in evidence, and which empowered them so to do, established a general system of sewerage for the greater part of the village, and, with a view to the better drainage of that part of the village, laid sewers to the east and north of the railroad so as to deliver surface water and sewage through said culvert; that they made no change in direction until after passing the premises in question, but from about the middle of Toohey's land they laid a sewer of cement tile for a considerable distance in a straight line across Howe, Forest, and School streets and for some distance beyond, to a termination in an open lot, whence sewage ran in the original watercourse, as before; that in 1872 the trustees made a

substantial change in the course and construction of the sewer west of the railroad by discontinuing the use of the former sewer and watercourse beyond School street, and building a new sewer of cemented cobble-stones under that street in a straight line westward to East Creek ; that the sewer then made formed an angle with the former sewer of about forty-five degrees ; that the grade of the new sewer from that angle to East Creek was less than that of the old one, the descent of the one being two feet and nine inches, while that of the other was five feet and nine inches, and that the new sewer was one hundred and forty-five feet longer from that point than the old one ; that the bottom of the sewer under the railroad was five feet higher than at said angle, which was seven hundred and twenty-five feet distant ; that the trustees then caused the tiles of the old sewer below the angle to be taken up, and a ditch to be dug in a straight line from the railroad across the premises in question to the upper end of the former tile sewer on Toohey's premises, and connecting therewith ; and that, when the work of 1872 was done, many of the tiles were broken in being hauled from their former situation, and were so placed that they did not join each other.   The plaintiff introduced evidence further tending to prove that soon after the sewer was so completed a storm arose and filled the sewer with water, &c., so that several rods of the tiling along Toohey's premises and the premises in question, burst, and flooded the premises ; that the sewer remained unrepaired and subject to overflow in case of storms, until after the plaintiff bought the premises and went into occupation thereof, in the spring of 1873 ; that after the plaintiff purchased, the water from the sewer, including nearly all the water-closet matter and sewage of the village, periodically escaped from the broken tiles and flooded the plaintiff's premises, destroying vegetation, running into the cellar of his house, and finally causing continual sickness in his family ; that matters remained in that posture for about two years, to the knowledge of the trustees, when the plaintiff made written complaint thereof, whereupon the trustees made some repairs, but not enough so but that the overflow of sewage continued substantially as before.

The defendant introduced as a witness the president of the

board of trustees, who had known the premises for thirty years, and offered to prove by him that prior to the building of the sewer the sewage ran through the open ditch ; that the ditch was so constructed that in times of high water the banks of the ditch and the surrounding land were overflown ; and that there was no damage to the premises by reason of the making of the sewer. The plaintiff objected to the admission of the evidence, and it was excluded ; to which the defendant excepted.

The defendant then introduced A. C. Bates as a witness, and offered to prove by him that he was a member of the board of trustees just prior to the building of the sewer in 1872, and that the plaintiff's grantor, who then owned the premises, petitioned the trustees to put in a box sewer to keep the water, &c., in the old ditch from overflowing. The plaintiff objected to the admission of the testimony, and it was excluded ; to which the defendant excepted.

The defendant introduced evidence tending to prove that in locating the sewer and determining its size and the materials of which it should be built, the trustees were all agreed ; that the change from the straight line and original water-course to the school-street line was made under the superintendence of a competent engineer ; that the tiles used in laying the sewer through the plaintiff's premises were not broken in moving, and that the work was well done ; that in times of high water East Creek would occasionally rise five feet and had been known to rise seven feet above low-water mark ; and that the overflow from the sewer was occasioned by the setting back of water from the creek.

The plaintiff introduced evidence tending to prove that the overflow occurred during sudden showers, and before the water rose in the creek and set back therefrom, and not during long-continued rains. The engineer under whose superintendence the work was done, who was introduced as a witness by the plaintiff, testified that he did not regard the change of route made in 1872 as a judicious one, and did not approve of the general location adopted ; and that in view of said angle and the diminished grade he did not consider that the sewer above Toohey's land was sufficiently strong. He also testified that there were three methods

Winn *v.* Rutland.

of constructing the sewer ; one by iron pipes, which would have withstood any existing pressure ; one by tiling, which might have withstood the pressure, if well laid ; and one by a culvert of cemented stone, which would have been least effective of all.

The defendant contended that the difficulty was wholly due to the location of the School-street sewer below the plaintiff's premises, involving the construction of the angle and the diminished grade. But the plaintiff contended that the increased pressure arising from those causes was an element of the question of sufficient construction of the sewer above ; that the tile sewer across his premises was negligently and insufficiently constructed in view of the route below, and in other respects ; and that it was negligently permitted to remain out of repair.

The defendant requested the court to charge that the authority given to the trustees by statute relative to sewers imposed on them the exercise of judgment and discretion, so that no private action would lie against the defendant for any failure or refusal to exercise the authority conferred, nor for any mistakes or errors of judgment in locating or altering any sewer ; that the defendant was not answerable in a private action for not providing sufficient sewerage for the plaintiff's premises or for any part of the village ; that the defendant was not liable in an action for damages occasioned by the insufficient size of the sewer, nor by the setting back of water because of insufficient grade ; that a private action would not lie for damages occasioned by the location of the sewer so that the water set back, &c., although no such result would have followed location in a different place, or the leaving of the sewer where it was placed in 1869 ; that all deliberations and decisions of the trustees in locating sewers, &c., selecting the materials of which they were to be made, &c., were official duties and powers, judicial in their nature ; that the only damages for which the defendant was liable were such as arose from negligence in constructing the sewer ; and that if the making of the sewer did not put the plaintiff in a worse position than he would have been in if the sewer had not been made, he could not recover.

The court refused so to charge, but charged substantially as follows :

The village upon authority assumed to make the sewer through the plaintiff's premises. It had the lawful authority so to make it and the plaintiff could not prevent it. It was for the defendant to determine what kind of sewer it would make, and how it would make it. It is obvious that the defendant was under obligation so to make it as not to ruin the plaintiff's premises as a place of residence, or injure it or any other person's property. The sewer was laid down in 1872. You have heard how it was located and constructed through the plaintiff's land, and how it has been permitted to remain there, and how it has operated as thus located, constructed, and permitted to remain, as affecting his territory and his house. Now has the defendant been negligent of its duty in the making of the sewer, or in the matter of the repair of it? If so, then it is liable to the plaintiff for the damages he has sustained in consequence of such neglect. Has the defendant been neglectful of its duty in the manner in which the sewer was made? In order to determine that, you have to bear in mind all that pertains to the subject. The defendant was bound properly to make a sewer to serve the legitimate purposes of a sewer, viz., to carry off the waste water and drainage from the various buildings and establishments through the village. What would do that properly is to be judged of with a view to what was to come into the sewer and into the main sewer; the quantity and character of the stuff that would pass through it; the grade on which it would proceed to its outlet; the character of the soil through which it would pass; the occupancy of the land along its course; the purposes for which that land was, and was legitimately to be, occupied; and in connection therewith the proper size of the sewer to give a sufficiently free flow to its contents and to prevent the sewer from bursting and doing injury to the persons through whose land and by whose dwellings it should pass. Having in mind all that, did the defendant make the sewer through the plaintiff's land as it was its duty to do, or did it fail in that respect,—failing to exercise in the making of the sewer such reasonable judgment, discretion, and care as was requisite in order to make it safe as against injury to the plaintiff? If you find that the defendant failed in its duty in that respect, and these injurious consequences have

ensued to the plaintiff, the defendant is liable for those consequences, and in this suit the plaintiff is entitled to have a verdict for compensation. Again, if you should fail to find that the defendant was in fault in the manner of making the sewer, then the next question is, has the defendant been in fault in the matter of the condition in which it has been since it was made, that is, in the state of repair? Has the defendant failed in its duty in the matter of keeping in repair; and for want of proper repair have these outbursts of the filthy contents flowed upon the plaintiff's premises and done the injury of which he complains? If that is so, then the plaintiff would be entitled to recover for that cause, even though you failed to find any defect in the original construction of the sewer along through his place. If after it was made, owing to one cause or another, it fell into a defective condition, and the defendant has improperly and negligently permitted it to remain in that condition without putting it in proper condition to protect the plaintiff, and those along through whose land it ran, the defendant would be liable on that score. In the matter of the construction of the sewer, a question has been moved before the court as to whether the matter of the location of that sewer should be regarded as entering into its construction in such a way as that if it was improperly located, having reference to the purposes to be served by it, that that would subject the defendant to liability. Suppose the sewer as it was built would have been sufficient in every respect, provided it had been properly located, now then as it was located, was that location a defect that would render the defendant liable? Practically, as I have already presented this subject, I consider it of no very great importance, because, as I have already said, in determining whether the village did its duty in the matter of the construction of the sewer, an element on which that is to be determined is its location. The defendant having chosen its location, did it do what it ought to have done in making the sewer reasonably safe as against injury to the persons along the line of it.

The court submitted to the jury to find specially whether the defendant neglected sufficiently and properly to construct the sewer in respects other than its location, and whether the defend-

ant neglected to keep the sewer in proper repair. The jury found for the plaintiff, and answered both special questions in the affirmative.

The defendant excepted to the refusal to charge as requested, and to the charge given upon the subject of the liability of the defendant, in so far as it varied from the requests, and to the charge, so far as it allowed the giving of damages that might be the result of the location or size of the sewer, or the materials of which it was made, and to that portion of the charge which included the location, size, and materials aforesaid within the grounds of recovery, and to the submitting of the questions to the jury under the definition and description of what was proper construction and repair, as contained in the charge.

*J. C. Baker*, for the defendant.

Municipal corporations created for the purposes of government, represent a part of the sovereignty of the State, and are not liable in a private action for damages resulting from the exercise of public prerogatives, or such powers as are given it for the public weal, unless the action is given by statute. *Baxter* v. *Winooski Turnpike Co.* 22 Vt. 114; *Hyde* v. *Jamaica*, 27 Vt. 443; *White* v. *Marshfield*, 48 Vt. 20.

The subject of constructing sewers is of the same general character as that of laying out streets. *Mills* v. *Brooklyn*, 32 N. Y. 489.

In the exercise of the authority given to make sewers, &c., the trustees act as public officers, and not as agents for whose acts the corporation are liable in a private action. *Flagg* v. *Worcester*, 13 Gray, 601; *Mills* v. *Brooklyn, supra; Maxmilian* v. *New York*, 62 N. Y. 160.

The damage complained of resulted wholly or partly from the location, or insufficient size, &c., of the sewer. The sewer was placed by the judical discretion of the trustees, and the defendant is not liable for their errors of judgment. *Child* v. *Boston*, 4 Allen, 41; *Barry* v. *Lowell*, 8 Allen, 127; *Flagg* v. *Worcester, supra;* Dillon Munic. Corp. s. 801.

If the making of the sewer did not put the plaintiff in a worse

condition than he would have been in if it had not been made, the defendant is not liable. Dillon Munic. Corp. s. 801; *Mills* v. *Brooklyn*, note by MITCHELL, J., 5 Am. Law Reg. 42.

The requests to charge should have been complied with.

*Prout & Walker*, for the plaintiff.

The defendant by accepting its charter and constructing its sewers entered into a contract with every individual interested in the performance of that duty, which could be performed only by constructing and keeping in repair sewers that would subserve the legitimate purposes of sewers. *Conrad* v. *Ithaca*, 16 N. Y. 158, and note. The duty thus imposed was not a public one— that is, not imposed by a statute applicable to all towns; and if the defendant was guilty of negligence, either in constructing or maintaining its sewers, and damage occurred in consequence thereof, it is liable to an action in favor of the party injured. *Jones* v. *New Haven*, 34 Conn. 1; *Conrad* v. *Ithaca*, *supra;* Whart. Negl. s. 262, and notes; *Ashley* v. *Port Huron*, 4 Am. Law Times, 77; *Byrnes* v. *Cohoes*, 67 N. Y. 204; Saund. Negl. 86 and note; *Gilman* v. *Laconia*, 55 N. H. 130.

But here also the damages or injury occurred in consequence of negligence in respect to the performance of a ministerial, as distinguished from a judicial, duty. The determination of the question whether sewers should be constructed may be considered *quasi* judicial; but the work is ministerial, where the undertaking is corporate. Under such circumstances the corporation must respond in a civil action for all damages caused by the careless or unskilful manner in which sewers are constructed, as well as for negligence in failing to keep in repair. Dillon Munic. Corp. ss. 753, 801, 802; *Jones* v. *New Haven*, *supra;* Whart. Negl. ss. 263, 264 and note; *Barton* v. *Syracuse*, 36 N. Y. 54; *New York* v. *Furze*, 3 Hill, 612; *Child* v. *Boston*, 4 Allen, 41.

The position of defendant would seem to be that the difficulty was wholly due to the planning and location of the sewer below the plaintiff's premises, and that the location of the sewer, as an act antecedent to its construction, was a judicial act, and the real and only occasion of the difficulty. We cannot see how the loca-

tion of the route is in any sense an act more judicial in its nature
than the subsequent steps in construction.   No line of demarca-
tion can be drawn at any point.   But if it be conceded that the
defendant could clear itself by proof that the damage was due
solely to an ill-advised location, it has not done so ; for the jury
expressly found that the defendant neglected sufficiently and prop-
erly to construct the sewer in other respects, and also neglected
to keep it in proper repair.   Either finding will sustain a general
verdict for the plaintiff.   The true bearing, however, of the ques-
tion of location is that stated in the charge, where the jury are
asked whether, the location being chosen, the defendant did what
it ought in keeping the sewer reasonably safe, and are told that
in determining whether the defendant did its duty in the matter of
the construction of the sewer, an element on which that was to be
determined was its location.   This was a proper question for the
jury, whether or not the sewer was negligently built, having re-
gard to its course, and this was found for the plaintiff also ; so
that whether the question of the location is in the case or out of
it, it was properly disposed of on the trial.   *Musgrave* v. *Smith*,
5 Reporter, 350.

The testimony of Page and Bates was immaterial and properly
excluded.   The requests to charge were properly not complied
with ; and the charge given was without error.

The opinion of the court was delivered by

POWERS, J.   The declaration is in two counts.   In the first,
the plaintiff avers that he is the owner of a house and house-lot
on Howe street in the village of Rutland, and that the defendant,
being authorized to construct sewers for the accommodation and
convenience of the inhabitants of the village of Rutland, so negli-
gently constructed a sewer through his lands that by reason
thereof the contents were emptied upon his premises, doing him
and his property great damage.   The second count charges the
defendant with negligence in not keeping the sewer in repair,
whereby like damages followed.   At the trial the plaintiff offered
proof that unfit materials were used and bad workmanship dis-
played in building the sewer, and that after it was constructed it

was suffered to remain a long time out of repair and in a dilapidated condition. No claim was made by the plaintiff in his declaration or proofs, that the village had incurred a liability to him, by reason of any fault in the general system of sewerage adopted, or in the plan and location selected for the sewer in question. If such had been the issue for trial, the subject-matter of several of the defendant's requests for instructions to the jury, and much of the argument addressed to us at the hearing upon the exceptions, would merit more extended consideration. General propositions of law, however correct in form and substance, are not to be embodied in the charge to the jury, unless involved in the cause on trial. Any other rule would work serious mischief by leading the attention of the jury to other matters than those they properly have in charge.

The charter of the village of Rutland, among other things, empowered the village to build and maintain sewers. It did not impose their construction upon the village as a duty to be performed against its will, but as a privilege to be exercised or not, at its pleasure. The correlative rights and duties of the corporation, and individuals interested in, and affected by, the exercise of the chartered power, are not to be sought for in the rules of law applicable to legislative duties, imposed upon municipal corporations, which are designed to subserve a general public good, and which devolve upon all such corporations alike, such as the building and keeping in repair of highways and bridges, public buildings, &c. In such cases no private right of action arises from negligence in the performance of the duty, unless it be specially given by statute. The municipality, as a convenient instrumentality, is charged with the exercise of a public duty for the State, and not for itself. But in the case at bar the charter was sought and accepted in order to realize expected benefits to the inhabitants of the village, and not to discharge a public governmental duty. The chartered power to act is thus proprietary in its character, conferring upon the village a valuable privilege and franchise. This privilege, however, is not granted without consideration. It carries with it an implied obligation to use the power granted in such a way as to work no unnecessary injury to

persons or property affected by its exercise. In construing the charter, therefore, it is to be read as if the duty to exercise ordinary care and skill in the construction of sewers was set forth in express language ; and this duty enures to the benefit of every individual interested in its performance. Cooley Const. Lim. 247 ; Shearm. & Redf. Negl. s. 126 ; 2 Dillon Munic. Corp. s. 802 ; *Brine* v. *Great Western Railway Co.* 2 Best & S. 402 ; *Manley* v. *Canal & Railway Co.* 2 H. & N. 840 ; *Weet* v. *Brockport,* 16 N. Y. 161.

In acting under the chartered power, the village authorities must necessarily deliberate and adjudge upon the system or plan of the work—when to perform it and where to locate it. So far, no liability to private action is incurred for errors of judgment or want of forecast. The inauguration of a plan of sewerage, so long as it remains in mere resolution, cannot in the nature of things, work actionable injury or harm to individuals. Having devised a plan, it may be carried into execution with due care and skill, without risk of private action. The charter makes the construction of the work lawful, and (unless an action be given by statute) if the work be done in a proper manner, the chartered power is a complete bar to a claim for consequential damages to persons or property, although the same act, if done without legislative sanction, would be actionable. *Salus populi suprema lex.* But when the work authorized by the charter is done negligently and unskilfully, and occasions damage to individuals, it is done contrary to the import and spirit of the charter, and the donee of the power has broken the condition upon which the grant was made. In such cases the charter cannot be invoked as a justification, for it no where sanctions a negligent exercise of the power. Herein is found the true principle upon which to ground a right of private action for consequential damages against the village for the faulty construction of the sewer in question. The village undertook for its own advantage to construct a work through the plaintiff's land ; it assumed the duty at the same time and by virtue of the same right, to do the work with proper care and skill ; it failed to discharge this duty, and thereby occasioned the damages complained of. By reason of this negligence an action arises

upon common-law principles in favor of the party injured. It is the same right of action that is given to an individual suffering damage from the negligence of another in the management of his own business. *Sic utere tuo ut alienum non lœdas.* The doctrine is well stated by NELSON, C. J., in *Bailey* v. *New York*, 3 Hill, 531, and s. c., 2 Denio, 433, where an action was brought against the city for damages received by the careless construction of the Croton dam connected with the city waterworks. Speaking of chartered powers granted for the private advantage of the corporators, he says: "But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation is to be regarded *quo ad hoc* as a private company. It stands upon the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." To the same effect *Detroit* v. *Corey*, 9 Mich. 165; *Jones* v. *New Haven*, 34 Conn. 1; *Child* v. *Boston*, 4 Allen, 41; *Brine* v. *Railway Co. supra; Clothier* v. *Webster*, 12 C. B. 789.

It is also settled by authority that when the municipality has constructed a work designed for the advantage of its own inhabitants, the duty rests upon it to keep it in repair; and for negligence in this behalf the party injured thereby has his common-law action. 2 Ad. Torts, 1314.

It is argued that if the construction of the sewer, though built negligently, occasioned the plaintiff no greater damages than he would have suffered if it had not been built, the defendant would not be liable. Evidence was offered at the trial upon which this claim is founded, and 2 Dillon Munic. Corp. s. 801, is cited in support of the proposition. If this doctrine could receive any countenance whatever, it ought to appear that the damages suffered by the plaintiff before the sewer was built were unavoidable. If he had a remedy against them of which he has been deprived by the action of the village, there is little justice in holding the village excusable for damages resulting from its act.

The case shows that the formation of the land is such that the surface water from a large section of the village naturally runs through a culvert under the railroad southerly down a small nat-

ural watercourse through the plaintiff's lands and lands below, to East Creek. In this condition of things, the plaintiff was exposed to damage from water, at times of heavy. rainfall and the sudden melting of snow, as the residents above him were under no obligation to keep upon their own premises the surface water deposited there by natural causes. But against such damage he had the natural right of self-defense ; he could protect his premises by turning away the water in any manner most serviceable to himself and not injurious to others. The damage he suffered from a flooding of his premises with surface water was quite different in kind and amount from damage occasioned by emptying the sewerage of a thickly inhabited portion of the village into his cellar. In 1869, the village trustees laid a sewer above said culvert, into which they collected the surface water and sewage of the same locality, and delivered the same through said culvert, whence it ran down the watercourse through the plaintiff's lands as the surface water had been accustomed to run before. It is not claimed that the residents of the upper locality had acquired any easement in the plaintiff's lands for the discharge of house drainage. They had no such right. They were bound to take care of their own house drainage ; and had no more right to empty it upon the plaintiff's lands than they would have to pile rubbish there. The plaintiff had the right to prevent its coming upon his lands. Nor had the village authorities any right to make the lands of the plaintiff a place of deposit for the sewage of the village, creating there a cesspool and nuisance, and endangering the lives of the plaintiff and his family, without first making compensation therefor. Such use of the plaintiff's lands amounts to a *taking* of his land within the purview of the constitutional requirement that compensation shall be made. *Eaton* v. *Railroad Co.* 51 N. H. 504 ; *Inman* v. *Tripp*, 11 R. I. 520 ; *Nevins* v. *Peoria*, 41 Ill. 502 ; *Pettigrew* v. *Evansville*, 25 Wis. 223 ; *Ashley* v. *Port Huron*, 15 Alb. Law Jour. 81 ; *Pumpelly* v. *Green Bay Co.* 13 Wal. 166 ; *O'Brien* v. *St. Paul*, 18 Minn. 176 ; *Columbus* v. *Woolen Mills Co.* 33 Ind. 435 ; 2 Ad. Torts, 1314. Judge COOLEY in *Ashley* v. *Port Huron* lays down the rule that a municipal corporation is responsible, like an individ-

ual, where it invades private property, and that if it discharges its sewers upon private property, it is answerable in damages, and that the flooding of private property is as much a taking of it as any other appropriation would be.   The Supreme Court of the United States say, in *Pumpelly* v. *Green Bay Co.*, that "when the real estate is actually invaded by superinduced additions of water, earth, sand, or other materials, or by having any artificial structure placed on it, so as effectually to destroy or impair its usefulness, it is a *taking* within the meaning of the Constitution." In *O'Brien* v. *St. Paul* it was held that a city was liable when it discharged its sewers into a small watercourse running through the plaintiff's land, thereby doing the plaintiff damage.   To the same effect is the case of *Columbus* v. *Woolen Mills Co.*, *supra*.

As to the surface water accustomed to flow down from the upper locality, we have seen that the plaintiff stood for his defense upon his natural rights ;   and if the village had undertaken to build a sewer to carry off that, and it had proved inadequate, and occasioned no new damage, there might be no ground for liability. The case then would be like *Mills* v. *Brooklyn*, 32 N. Y. 489. In such case the village does not undertake to bring upon the plaintiff's land any new substance—to impose any new burden, or expose the plaintiff to any new peril;   but simply to regulate and control the flow of water already running there.   The law regulating the rights of individuals and corporations in respect to surface water is quite a different thing from that governing the disposal of house drainage, which every householder is bound to keep upon his own premises, and in respect to which the public authorities, if they undertake its disposal, are held to the exercise of proper care and skill.   We have seen that the village undertook to discharge the sewage of the upper locality down through the watercourse in addition to the surface water accustomed to run there, and that this was unlawful and gave the plaintiff a remedy.   Now, when the village, in 1872, undertook the construction of the sewer in question—digging a new channel and constructing a new sewer—and by means of bad workmanship the plaintiff was subjected to damage, is it any answer to say you shall receive no damage for the later injury, because you are no worse

off than before. The village did not undertake a service to the plaintiff. The sewer was built specially to accommodate the locality above him. The damage complained of is not charged to the flow of surface water, but to the filth and offal that the village has undertaken to transport from the upper locality to East Creek, and which by their negligence has escaped *in transitu.* If the plaintiff had suffered like damage from the same cause, before the construction of the sewer in question, it was not because he was bound to suffer the sewage to be emptied upon his premises like surface water, but because the village had wrongfully taken his land and appropriated it without legal right as a place of deposit for sewage. Thus it is seen that the offer of evidence to show that the plaintiff's damages were no greater than the former damages, did not disclose an excuse for the present injuries, but did establish that the plaintiff had two causes of action against the village instead of one. The damages now complained of were occasioned by the breach of the very condition upon which the right to place the sewer upon the plaintiff's premises was granted. The doctrine contended for as applied to his case, has very little sanction in authority and none whatever in reason.

The jury were told in the charge that in measuring the care and skill required of the defendant in the construction of the sewer, the location selected was an element for consideration. For all practical purposes in this case it is wholly unimportant whether that direction was proper or otherwise, because the jury, upon competent evidence, have found specially that there was negligence in the construction, irrespective of the question of location. But it is somewhat difficult to see why the location of a contemplated work of this kind is not one of the most important factors in the problem how to build the sewer with reasonable skill. The plan adopted fixed the location of a sewer from a portion of the village north of the railroad through the plaintiff's land to East Creek. The duty assumed was, to construct that sewer in that location with due care and proper skill, to the end that it should convey the drainage emptied into it to its ultimate destination, without damage to residents along its route. The nature and amount of the drainage to be transported, the natural

law by which it is propelled, the grade that would accelerate its pace, the angles that would impede its flow, and other considerations obviously involved, were all to be weighed in measuring the degree of diligence required to build a sewer that would subserve the purposes of a sewer and discharge its contents at the place of deposit. The strength of the sewer, and the materials and workmanship employed, must be determined with reference to the obstacle to be overcome.

We find no error in the record, and the judgment is affirmed.