Eddy v. Davis.

## Lewis S. Eddy v. Silas Davis.

*Evidence. Res Gesta. Declarations.*

The plaintiff and defendant each claimed to be the owner of certain cattle. The plaintiff claimed that W. bought them for him, as his agent, and with his money. The defendant insisted that W. bought the cattle for himself, with his own money, and sold them to the defendant. The plaintiff introduced evidence to show that he employed W. and another agent to drive the cattle to a pasture, hired jointly by himself and W., and that he directed them to call, as they went along, upon the owner of the pasture, and there brand the cattle with the initial · of the latter's name ; and that they did as he directed them ; the cattle thus branded comprising the ones in controversy, and also a larger number belonging to the plaintiff, and not in dispute. The defendant claimed that the cattle were thus branded merely to show, if any of them strayed away, that they belonged to that pasture; and offered evidence to prove that while W. and the plaintiff's agent were branding the cattle, W. pointed out the cattle in suit and said that they belonged to him, and that the others belonged to the plaintiff ; *Held,* that the plaintiff's evidence as to the branding of the cattle having been admitted, the evidence offered by the defendant of W.'s declaration made at the time of the branding was admissible as part of the *res gesta,* to rebut the inference that the cattle were recognized as the property of the plaintiff by the act of branding them according to his directions and as the cattle admitted to be his were then marked.

*Held,* also, that if the court had instructed the jury that they should reject from consideration the whole transaction of driving the cattle to the pasture and branding them, as not tending to prove ownership either in the plaintiff or W., then the defendant could not have complained of the exclusion of the declarations made by W., at the time of the branding.

Replevin for seven cattle. Plea not guilty and trial by jury at the April Term, 1860,—Redfield, Ch. J , presiding.

It appeared in the course of the trial that in the winter of 1858-9, the plaintiff and one Wright formed some kind of a connection in the business of purchasing and marketing cattle, both having been employed in the business before that time on separate account. The arrangement between them was, as claimed by the plaintiff, that the plaintiff should furnish all the money to make the ·purchases and own all the cattle, and that Wright should have no control or interest in the business except as an agent, to be compensated for his services by half of the profits. The plaintiff further claimed that the cattle in controversy were

15

purchased by Wright with the money of the plaintiff, under this arrangement.

The defendant had a private debt against Wright, and bought the cattle in question of him in payment of the debt. The defendant claimed that Wright was a partner with the plaintiff in the general business of buying and selling cattle, and that in regard to the cattle in suit, Wright was the sole owner of them, having paid for them with his own money, and purchased them on his own account ; and having bought one of them (the one for which the plaintiff failed to obtain a verdict) previous to the above mentioned arrangement with the plaintiff.

The cattle were all in a pasture in the town of Mount Holly at the time of the transfer by Wright to the defendant. It appeared by all the testimony in the case that the plaintiff and Wright hired this pasture jointly of one Gideon M. Lee for the season. The plaintiff claimed that the pasture was hired for the purpose, chiefly, of carrying on the joint business of himself and Wright, but that if they had not cattle enough on joint account to fill the pasture, he might put in his own cattle. Wright's account of the matter was that the pasture was hired for the purpose of pasturing an equal number of the separate cattle of each, and that in accordance with this understanding he put in the cattle in controversy on his own separate account, and the plaintiff put in his separate cattle to balance them. The plaintiff and Wright agreed in their testimony that the plaintiff put in a number of cattle of his own ; and the plaintiff claimed and testified that the cattle in suit were his in the manner before stated ; that he employed Wright, as above mentioned, to purchase, and with the assistance of another agent of his, one Wilder, to drive them up from Chester to Mount Holly and put them in the pasture, and directed them to call at Lee's and mark them as they went up, by branding the initials " G. M. L." with the brand of the owner of the pasture, which was accordingly done.

Wright testified that the cattle in suit were bought by him with his own money; that the plaintiff understood they were his (Wright's) cattle ; that the plaintiff sent up a larger number of his own cattle at the same time in charge of Wilder, and that

they called at Lee's and put his brand upon all the cattle, so that if any of them strayed out of the pasture they could be identified as cattle belonging to that pasture.

The court had held, during the whole trial, with the acquiescence of the counsel on both sides, that the mere declarations of Wright in regard to the partnership, or to the title of the property in dispute, were not evidence, unless made in the presence of the plaintiff, or brought to his knowledge, and as part of some transaction which was evidence.

The defendant then offered to show, by Lee, that at the time Wright and Wilder were marking the cattle, all alike, Wright pointed out to him the seven cattle in question, and said that they belonged to him, and that the others, except one pair of oxen, belonged to the plaintiff. To this the plaintiff objected, as being nothing but Wright's naked declaration. The defendant claimed it as a part of the transaction of marking, and therefore admissible.

The court being unable to see how the transaction of marking the cattle had any legal tendency to prove the issues before the jury; or if it had, how this statement of Wright in regard to his ownership of these cattle, had any connection with the transaction then in progress, and regarding its only force as tending to corroborate his testimony by his declarations out of court, and that its force depended altogether on the credit due to Wright's veracity under the circumstances, ruled out the evidence offered, to which the defendant excepted.

The minutes of the county court taken upon the trial, were made part of the case, but it is unnecessary, under the opinion, to set them forth. The verdict and judgment were for the plaintiff for six of the cattle in question.

*A. Stoddard*, for the defendant.

*C. B. Eddy* and *Stoughton & Grant*, for the plaintiff.

ALDIS J. The rule of law that the declarations of a party are admissible as evidence, when and only when they are a part of the *res gesta*, is one of the most difficult in practical applica-

tion. The declarations must be connected with some transaction which is admissible in evidence, and must be made at the time, and must serve to explain, modify, or give character to the transaction. To determine upon the proper application of the rule to the case at bar, it is necessary to consider what the transaction was in connection with which the declarations here excluded were made—whether it was admissible as evidence, and upon what grounds, and whether the declarations serve to modify or affect the inferences which may properly be drawn from the transaction.

The question in dispute was whether six cattle belonged to the plaintiff or the defendant. Each claimed them. The plaintiff offered evidence to show that he employed Wright as his agent to buy the cattle for him. The defendant claimed that Wright bought the cattle for himself, and with his own money, and sold them to the defendant. The plaintiff offered evidence to show that he employed Wright with another agent of his, one Wilder, to drive the cattle up from Chester to Mount Holly, and put them in a pasture hired jointly by himself and Wright, and that he (the plaintiff) directed Wright and Wilder to call as they went to the pasture at G. M. Lee's, and there brand the cattle with the letters G. M. L., the initials of Mr. Lee, of whom the pasture was hired, and that they did as he directed;—that the cattle thus driven to pasture and branded, comprised the six in dispute, and a larger number of his own, about which there was no dispute. Now the acts thus proven were clearly acts of ownership—the exercise of dominion over the property—such as the owners of cattle usually exercise over their own, but do not presume to use with cattle belonging to others. The marking of cattle, either with one's initials, or with any other mark which might serve to identify them is clearly evidence to prove ownership. If all this was done by the authority of the plaintiff, it was evidence in his favor. If Wright assisted in this whole transaction—if he marked the cattle which he claimed with the same mark which the plaintiff had directed to have put on his, and turned them into the same pasture and said nothing to indicate that he claimed to own them, the natural inference which one would draw from the transaction, would be that all the cat-

Eddy v. Davis.

tle belonged to one person—and that the plaintiff. But if at the time he was thus using the same mark which the plaintiff had appropriated for his cattle, he had told those who aided in the marking that the six cattle were his and not the plaintiff's, and especially if he said this in the presence of the agent of the plaintiff (Wilder)—it seems to us that it is a declaration which most materially affects the character of the act done, and the natural inferences to be drawn from it   It rebuts the idea that the cattle were by the act of marking recognized as being the property of the plaintiff—and tends to show that they were not all alike, though marked alike, but that the marking was as to the six cattle by his authority.

The court excluded the evidence that Wright, while he and Wilder were branding the cattle, pointed out the six cattle, and said that they belonged to him, and that the others belonged to the plaintiff.  Now this was material for the defendant to rebut the inference naturally to be drawn from their being all marked with the mark which the plaintiff had directed, and which was used upon those which were admitted to belong to the plaintiff, that they all belonged to the plaintiff.  It was material too, as strengthening Wright's evidence that the mark was used to show, if any of the cattle strayed away, that they belonged to the pasture.   We think it should have been admitted.

It is urged that this evidence was not used by the plaintiff to show that he owned the cattle—but only to identify them as the cattle taken from the pasture by the defendant.  If the court had given this instruction to the jury—that they should reject the whole transaction of driving the cattle to the pasture, and branding them, as not tending to prove ownership in either the plaintiff or Wright, then the defendant could not complain of the exclusion of the declaration made by Wright ; as that was admissible only to rebut inferences which might, without that, be erroneously drawn from the transaction, that he thereby recognized the property to be the plaintiff's   The whole being excluded by the court, that part of it which favored the defendant would be immaterial.   But the court does not appear to have done so.

The testimony offered by the plaintiff was admitted.   Unless the court instructed the jury to reject it, they would treat it as

evidence in the case. Upon examining the minutes of the charge (which are quite meagre) we are unable to find that he gave any directions to the jury in regard to this evidence. The reasons which the court state in the bill of exceptions, as having influenced them in excluding the declaration of Wright, do not appear to have been given as instructions to the jury ; and even if they had been, they seem to result from an impression upon the mind of the court that the act of branding was to be taken by itself alone and disconnected with the alleged previous directions of the plaintiff : and that in this view the marking of the cattle did not tend to show that either the plaintiff or Wright owned them. This we think was an erroneous view of the evidence, and one which the jury would not have taken, unless expressly directed to do so. We are not able to find that any such direction was given. Without such direction they would consider the marking as an act done by the direction of the plaintiff, and thus evincing his ownership ;—not the mere marking of initials, which of themselves applied neither to the plaintiff or to Wright, and therefore did not tend to prove ownership in either, and which was to be considered as an isolated act, deriving no significance from the plaintiff's previous orders. We have not thought it necessary to review the decisions to which counsel have referred us. They all agree in the statement of the general principle. But it is in the application of the principle to facts that the difficulty lies, and upon this subject each case stands so much upon its own facts, that it furnishes but little aid either in the illustration or application of the principle to any other. The opinion of the court in 9 Cushing 36, states with perspicuity the general rule, and has most appropriate remarks upon the difficulty which attends its application, and the singular differences of opinion among eminent judges in determining in particular cases the admissibility of such evidence. None of the cases cited by counsel seem to resemble the case at bar so far as to assist us in solving the question here presented. As we think the evidence improperly excluded, we reverse the judgment, and remand the case for a new trial.

Judgment reversed.