SHELDON EDGERTON *B* v. J. H. C. *A* HODGE.

*Contract.    Statute of Frauds.*

Where parties in making a contract omit to do what the statute of frauds requires to be done to make a valid contract, it requires the consent of both parties to supply the thing omitted.

On the 30th of June, A bargained with B for his cheese, amounting to over forty dollars, but nothing was done to bind the bargain. The next day B wrote to A, "I shall stand to it," (alluding to the contract,) "but shall want you to pay me fifty dollars to bind it." The day following, July 2, A enclosed fifty dollars in a letter and sent it by mail to B, which he received on the 8th, and immediately returned it to A. *Held*, that B had a right to decline to receive the money, and by so doing left the contract void under the statute of frauds.

ASSUMPSIT, which was referred to a referee, who reported :

"That on the 30th day of June, 1864, the parties made an agreement by parol, by which the defendant agreed to sell to the plaintiff what new milk cheese he then had on hand, and unsold, amounting to 975 lbs., and the new milk cheese he should make thereafter during the season, and the plaintiff agreed to pay the defendant therefor at the rate of fifteen and a half cents per pound, and every twenty days thereafter agreed to call at the defendant's house in Dorset, select such cheese as would be fit for market, attend its weight there, and pay the defendant for the cheese so selected and weighed, and then the defendant was to deliver the same to the plaintiff at the railroad depot in Manchester.  The day after the above agreement was made, the defendant, by his son, Albert Hodge, wrote and sent by mail a letter to the plaintiff (a copy of which is annexed, dated July 1, 1864,) depositing the same at the post office in East Rupert, and directed to the plaintiff at Pawlet, and received by him by mail on the same day.  The next day, after the return mail from Pawlet to East Rupert had gone out, it being on Saturday, the plaintiff enclosed in a letter, directed to the defendant, at East Rupert, and left it in the post office at Pawlet, to be carried by mail to the defendant, the sum of fifty dollars.  (A copy of plaintiff's letter is hereunto annexed, and the envelope enclosing the fifty dollars is postmarked ' Pawlet, July 4.')   This letter of the plaintiff was, on the 8th day of July, 1864, handed to the said Albert Hodge, by the postmaster of East Rupert, and it was on the same day carried by him to the defendant, opened by the said Albert, the fifty dollars refused to be received by the defendant, and the letter of the plaintiff, with the fifty dollars, and the envelope enclosing them, were, by mail, returned to the plaintiff, with no communication accompanying them

from the defendant. The plaintiff received the so enclosed wrapper, money and letter, on the 9th of July, 1864, and kept the same fifty dollars for six months thereafter. A daily mail is carried between the postoffices of Pawlet and East Rupert, a distance of six miles. On the 20th day of July, 1864, the plaintiff sent word to the defendant to deliver what cheese he had fit for market to the depot in Manchester. The defendant replied to the messenger that he had no cheese for the plaintiff. No other communication ever took place between the parties in regard to the cheese after the return of the money as above stated until this suit was brought. The defendant sold all his cheese to other parties, making his first sale on the 26th day of July, 1864.

" If the court shall be of opinion that from the foregoing facts the plaintiff is entitled to recover, and that the rule of damages should be the New York market price for cheese for the season of 1864, deducting freight and commission, then I find due the plaintiff $411.01. If the current price in the country, paid by purchasers and sent by them to market, is to be the rule, then I find due the plaintiff the sum of $306.32."

" Dorset, July 1st, 1864.

" Mr. EDGERTON :

" *Sir* :—According to our talk yesterday you bought my cheese for the season. I shall stand to it, but shall want you to pay me fifty dollars to bind it. I spose there is nothing holding unless there is money paid. I do not wish you to think I wish to fly from letting you have it so that it is sure. I will pay you interest on the money until the last cheese is delivered.

" Yours in haste,
" J. H. C. HODGE,
" per A. H."

" Pawlet, July 2, 1864.
" Mr. HODGE :

" *Dear Sir* :—I enclose you fifty dollars to apply on your dairy of cheese as you proposed.

" Yours, truly,
" S. EDGERTON."

The court, at the March term, 1868, PIERPOINT, C. J., presiding, rendered judgment on the report that the plaintiff recover of the defendant the smaller sum reported by the referee, and for his costs, to which the defendant excepted.

*Edgerton & Nicholson*, and *J. B. Bromley*, for the defendant.

*Fayette Potter*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. The parol agreement, entered into by the parties, June 30th, being for the sale of goods, wares and merchandise for the price of forty dollars and more, is within the statute of frauds, and inoperative, unless taken out of the statute by the subsequent acts of the parties. It is claimed by the plaintiff that the defendant's letter under date of July 1st, and the depositing of the plaintiff's letter with the fifty dollars in the postoffice on the 2d of that month, constitute a payment of part of the purchase money within the meaning of the statute. It will be observed that when those letters were written, no binding agreement had been concluded. The defendant, in his letter of July 1st, says: " According- ing to our talk yesterday, you bought my cheese for the season. I shall stand to it, but shall want fifty dollars to bind it." By that letter the plaintiff was notified that he could make the bargain binding upon himself as well as the defendant, by paying to the defendant the sum demanded for that purpose. The plaintiff on the 2d day of July enclosed fifty dollars in ⸱ letter, directed to the defendant and deposited it in the post⸳f , which letter was delivered to the defendant on the 8th of ⸱ , ⸱th. He did not accept the money, but returned it to ⸱ ⸳ ⸳tiff. It is clear that the act of depositing ⸳ ⸳ ⸳ ⸳ ⸳ey in the postoffice was not a payment to the defe⸳ ⸳ ⸳ ⸳ ⸳ter did not direct the money to be sent by mail; it contains n⸳⸳⸳ ⸳ that would indicate. that the defendant expected the plaintiff d reply by letter, or accept the proposition by depositing the ⸳ ⸳y in the postoffice; and the fact that the defendant by lette⸳ ⸳ered to allow the, plaintiff to perfect the agreement, by payin⸳ ⸳ rt of the purchase money, did not authorize or invite the plai⸳ to send the money by mail, or make the mail the defendant's ⸳ ⸳r of the money. The language of the defendant's letter is: ⸳ shall want you to pay me fifty dollars to bind it," that is, to make it a valid contract.

The money, when deposited in the postoffice, belonged to the plaintiff; it belonged to the plaintiff while bei⸳⸳ ⸳arried by mail

to the defendant, and it would continue the property of the plaintiff unless accepted by the defendant.   The plaintiff took the risk not only of the safe conveyance of the money to the defendant, but also as to the willingness of the defendant to accept it.   The defendant's letter, not constituting such a note or memorandum of the agreement as the statute required, left it optional with the defendant to accept or refuse part payment when offered to him, the same as if the defendant had sent to the plaintiff a verbal communication of the same import as the defendant's letter.   A point is made by counsel as to whether the money was conveyed and delivered or offered to the defendant, within a reasonable time after his letter was received by the plaintiff, but it seems to us that the time the money was offered is not material.   We think, even if the plaintiff had gone immediately after receiving the defendant's letter, and offered and tendered to him the fifty dollars, the defendant would have been under no legal obligation to accept it.   The mere offer of the defendant to receive the money would not estop him from refusing to accept it; but in order to take the case out of the operation of the statute, it required the agreement or consent of both parties, as to payment by the plaintiff and acceptance of it by the defendant.   Upon the facts of this case, we think the rights of the parties rest upon and are to be determined by the verbal agreement entered into by them on the 30th of June, and that their subsequent attempts to make that agreement a valid contract can not aid the plaintiff.   The statute provides that "no contract for the sale of any goods, wares or merchandize, for the price of forty dollars or more, shall be valid, unless the purchaser shall accept and receive part of the goods so sold, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum of the bargain be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The very language of the statute above quoted implies that in whichever way the parties verbally agree or propose that a contract for the sale of goods, wares or merchandise, for the price of $40 or more, shall be made exempt from the statute of frauds,

whether it be by the purchaser accepting and receiving part of the goods so sold, by giving something in earnest to bind the bargain, or in part payment, or by making a note or memorandum of the bargain, it must be done, if done at all, by the consent of both parties. It is obvious that it would require the consent of the purchaser to accept and receive part of the goods, and he could not receive them unless by consent of the seller; the purchaser could not give something in earnest to bind the bargain, or in part payment, unless the seller accept and receive it; nor could a note or memorandum of the bargain be made and signed, unless by the consent of the party to be charged thereby. A valid contract is an agreement or covenant between two or more persons, in which each party binds himself to do or forbear some act; and each acquires a right to what the other promises ; but if the parties, in making a contract like the present one, omit to do what the statute requires to be done to make a valid contract, it would require the consent of both parties to supply the thing omitted. Suppose it had been one stipulation of the verbal agreement on the 30th of June that the plaintiff should give and the defendant receive something in earnest to bind the bargain, and in pursuance of such stipulation the plaintiff had then offered to give or pay the amount so stipulated, and the defendant had refused to receive it, saying that he preferred not to receive any money until he had delivered the whole or part of the property, or had refused to accept the money so offered, or do any other act to bind the bargain, without giving any reason for such refusal, it would be evident that he did not intend to make a binding contract. But the fact that he had made such verbal agreement to receive something or to do some other act to bind the bargain, and that the plaintiff was ready and offered to comply on his part, would not take the agreement out of the statute. A verbal stipulation to give and to receive something in earnest to bind the bargain or in part payment, or a verbal promise to make a note or memorandum in writing necessary to exempt the agreement from the operation of the statute, is as much within the statute of frauds as is the agreement or contract taken as a whole; and a note or

memorandum in relation to giving something in earnest to bind the bargain, or in part payment, which is insufficient of itself to take the contract out of the statute, is also insufficient to make the contract binding upon either party.

The judgment of the county court is reversed and judgment for the defendant for his costs.