WILL LUCE v. MYRON G. BROWN.

February Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 6, 1922.

*Report of Referee—Conclusiveness—Replevin—Burden of Proof —Sale—Passing of Title—Intention of Parties—Common Law—Cash Sales—Rescission—When Acceptance of Payment Necessary to Pass Title—In Cash Sales Buyer Has No Right of Possession Without Tender of Price—Statute of Frauds.*

1. Under G. L. 2072, where facts have been found by a referee and his report accepted by the court, the findings are conclusive as to the facts in issue, and cannot be aided by inference.

2. In replevin the plaintiff has the burden at the outset of proving right of possession.

3. In an action of replevin, plaintiff having shown title, possession, and the taking of the property from him by force and against his will by defendant, who claimed title and right of possession in himself through a perfected contract of exchange, the burden is on defendant to show facts necessary to establish the change of title and right of possession.

4. In a contract for the exchange of property with no express agreement as to when the title shall pass, the question is one of intention of the parties, to be derived from the circumstances.

5. The common law rule that a chattel may be sold so as to vest title in the buyer, as between the parties, without actual delivery, is subject to the condition that such is the intention of the parties.

6. In the absence of an agreement to the contrary, where a sale is for cash or its equivalent, the rule is that delivery of the thing sold and payment of the purchase price are concurrent acts, and the title remains in the seller until delivery and payment, unless the seller waives the right to treat the sale as a cash transaction.

7. The failure of a referee to find that defendant had made any fraudulent representations as claimed by the plaintiff defeated

the latter's claim of right to rescind the contract on the ground of fraud.

8. Plaintiff agreed to trade his mare for defendant's horse and $30.00 boot money. *Held*, that the bargain was in effect for cash on delivery, and that title to the mare remained in plaintiff until payment was accepted.

9. In an action to replevy a mare which plaintiff had agreed to trade for defendant's horse and $30.00 boot money, and where the defendant had forcibly taken the horse from plaintiff against his will after the latter had repudiated the contract, the burden was on defendant to show tender before the plaintiff "backed out," and failure to obtain such a finding left the defendant without title or right of possession when he took the mare.

10. A verbal agreement for the exchange of plaintiff's mare for the defendant's horse and $30.00 boot money, where there is no showing that a payment of $1.00 made by defendant to plaintiff at the time of the agreement, was earnest money or a part payment, is within the Statute of Frauds, G. L. 1877.

ACTION OF REPLEVIN. Plea, the general issue. Heard on report of the referee at the June Term, 1921, Windsor County, *Fish*, J., presiding. Judgment for the defendant. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*John J. Wilson* for the plaintiff.

*John C. Sherburne* for the defendant.

MILES, J. [1] This is an action of replevin for a black mare. The case was tried before a referee, upon whose report judgment was rendered for the defendant for the return of the property and for the defendant to recover his costs, to which the plaintiff excepted. The hearing having been by a referee and his report having been accepted by the court, the findings are conclusive of the facts in issue, and no inference can be drawn in aid thereof. G. L. 2072; *Kimball* v. *Baxter*, 27 Vt. 628; *Fuller* v. *Adams*, 44 Vt. 543; *Darby* v. *National Bank*, 57 Vt. 370; *Goff* v. *Brainard*, 58 Vt. 468, 5 Atl. 393.

[2, 3] The controlling question here is whether the findings show a perfected contract of exchange of the mare in question for the defendant's brown horse and thirty dollars with

right of possession in the defendant when the mare was taken by him as hereinafter stated. If there is any shortage in the findings respecting this question, the defendant is the party who must suffer. This is apparent when we observe how the issues unfold themselves. The plaintiff has the burden at the outset of proving right of possession. He introduces evidence tending to show title accompanied by possession, and the taking by force and against his will. The findings show that he owned the mare, that she was in his possession, and that the defendant took her out of his possession against his will. On these facts the plain-tiff certainly would recover, if nothing further was shown. But the defendant attempts to meet this showing with evidence tending ·to show title in himself and right of possession through a perfected contract of exchange. There can be no reason to doubt that in these circumstances the burden of showing the fact necessary to establish the change of title and right of pos-session is on the defendant, to the extent, at least, of meeting the *prima facie* case of the plaintiff. This is upon the rule that the obligation of proving any fact rests upon the party who asserts the affirmative of an issue. *Singer Mfg. Co.* v. *Nash,* 70 Vt. 434, 41 Atl. 429; Green. on Evidence, Vol. 1, 8th ed., par. 74; *Sowles* v. *Carr,* 69 Vt. 414, 38 Atl. 77; 22 C. J. 68, par. 14, and cases cited.

[4-6] In a case like this, the question as to when title passes is one of intention of the parties, to be derived from the circumstances, and ordinarily the question is one of fact. Courts have laid down more or less definite rules to govern the circum-stances of a particular case, as the best means of arriving at such intention; but they must give way when the intention otherwise appears. 24 R. C. L. 15, 16; *Kitson Mach. Co.* v. *Holden, Admr.,* 74 Vt. 104, 108, 52 Atl. 271. The common law rule that a chattel may be sold so as to vest the title in the buyer, as between the parties, without actual delivery, is subject to the condition that such is the intention of the parties. 24 R. C. L. 35, par. 298. In the absence of any agreement to the contrary, the rule, where the sale is for cash or its equivalent, is that the delivery of the thing sold and the payment of the purchase price are concurrent acts, and the title does not pass until payment or tender of pay-ment is made, and the title remains in the seller until delivery (*Chalmers* v. *McAuley,* 68 Vt. 44, 33 Atl. 767, and cases there cited), and after delivery the title remains in the vendor until

payment, unless the seller waives the right to treat the sale as a cash transaction. *Allen Lumber Co.* v. *Higuera,* 86 Vt. 453, 85 Atl. 979. It was held in *State* v. *O'Neil,* 58 Vt. 140, 158, 2 Atl. 586, 589, 56 A. R. 557, that the owner must intend to part with the property, and if anything remains to be done before he assents to this, the bargain, as ROYCE, C. J., says, "may be an inchoate contract, but it is not a perfect sale."

[7-9] It is found that on or about September 1, 1919, the plaintiff and defendant entered into negotiations respecting the exchange of horses. The plaintiff was the owner of the mare in question, and the defendant was the owner of a brown horse. The negotiations respecting the exchange took place where the plaintiff was residing and where the mare was kept. The mare was examined by the defendant who, after the examination, expressed himself satisfied wtih her, and the boot money was then talked over and finally agreed upon at the sum of thirty dollars. The defendant "gave" the plaintiff one dollar and sent his son for the brown horse and the balance of the boot money. On the latter's return, the plaintiff examined the horse and refused to go on with the trade, claiming that the horse was not as represented. At some time—whether before or after the plaintiff said it was "no trade" does not appear—the horse and boot money were tendered to the plaintiff, and their acceptance in exchange for the mare was refused. Thereupon the defendant's son, by direction of his father, started to lead the mare away. Upon the plaintiff's resisting, the defendant knocked him down and the mare was led away and kept by the defendant until she was replevied by the plaintiff. During the negotiations, before the horse was sent for, the defendant suggested that the plaintiff go and see the horse, but the plaintiff said he had seen it and did not care to. The findings do not show that the plaintiff had ever examined the horse, but enough does appear to show that the plaintiff waived the right to examine it, and that the rule of *caveat emptor* applies. The failure of the referee to find that the defendant made any fraudulent representations in the respect claimed by the plaintiff, would defeat any claim of right to rescind the contract on the ground of fraud. But the plaintiff still had the right to repudiate or revoke the contract and by so doing subject himself to an action for damages. So far as the title to the mare is concerned, the bargain being in effect for cash on delivery, it remained in the plaintiff and would not pass to

the defendant until payment was accepted. There is no express finding respecting the plaintiff's intention, and while he was protesting that it "was no trade," and refusing to accept payment, it could not well be said that he intended to part with his property. The title clearly remained in the plaintiff until the instant tender of the horse and boot money was made, and there is nothing in the findings to show that he then, or at any time thereafter, assented to part with his mare. The findings leave it an open question whether the bargain was repudiated before or after the tender was made. But the burden was upon the defendant to show that the tender was made before the plaintiff "backed out," and it was necessary for the defendant to make this out to give him any possible standing under his defense, that the title in the mare had been transferred from the plaintiff to himself. *Singer Mfg. Co.* v. *Nash, supra.* We are not prepared to say and so do not decide that such a finding would save the defendant. However, the want of such a finding leaves the defendant without title to the mare, and so without right of possession when he took her against the will of the plaintiff.

[10]   We are not prepared to say but that the findings are also short on the question of whether the bargain had become a binding contract. There is no finding that the dollar found to have been given the plaintiff was given as earnest money, or in part payment. Without such a finding, the contract would be within the Statute of Frauds. G. L. 1877. It could have been neither unless it was accepted as such by the plaintiff. *Edgerton* v. *Hodge,* 41 Vt. 676. Perhaps the necessary fact could have been inferred from the facts already found; were such an inference permissible; but that was for the referee, and he has not found it, due probably to the fact that he was unable to find what was done with the money. But, if the findings are construed as showing that the dollar was paid as earnest money, to bind the bargain, or as part payment, that would not change the result. That fact would simply take the bargain out of the statute, and it would then stand as a contract *for* the exchange of horses, but not a completed and binding contract *of* exchange, which having been repudiated would entitle the defendant to his damages only for the breach of the contract for the exchange. The payment or tender of the one dollar would not in the circumstances make it a perfected sale.

*Judgment reversed, and judgment for the plaintiff for his damages and costs, and the case is remanded for the assessment of damages.*