RAVINE HOUSE COMPANY, INC. *v.* HELENA C. BRADSTREET.

October Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed January 14, 1930.

*Orrin B. Hughes* and *Frank O. White* for the plaintiff.

*Frank E. Barber* and *Ernest W. Gibson, Jr.*, for the defendant.

POWERS, J. The action is replevin. The plaintiff is a corporation owning a furnished hotel in Randolph, N. H., known as the Ravine House. The defendant is the widow of William D. Bradstreet, Sr., who was a director and officer of the plaintiff corporation. After Bradstreet's death in 1926, the defendant removed to Bellows Falls, Vt., certain goods and chattels mentioned in the officer's return on the writ herein. Some of these goods were taken from the Ravine House and some from a warehouse in Berlin, N. H., where they were in storage. All of the goods had been in the hotel. Claiming title to these goods, the plaintiff caused them to be replevied in this suit. At the trial below, the jury established the plaintiff's title to a part of the goods, and the defendant's title to the rest of them. Judgment went accordingly. Both parties excepted, but only the plaintiff's exceptions are for consideration.

The plaintiff called the defendant to the stand, and asked her by what claim of right she took the goods in question. The question was objected to and excluded, and the plaintiff excepted. In replevin, a plaintiff must prevail upon the strength of his own, and not the weakness of his adversary's title. *Keniston* v. *Stevens*, 66 Vt. 351, 353, 29 Atl. 312. No answer was filed herein, so the case stood on a general denial. G. L. 1791. This put in issue every material fact. *Plainfield* v. *Batchelder*, 44 Vt. 9, 12, and the burden of proof thereon

was on the plaintiff. *Luce* v. *Brown*, 96 Vt. 140, 142, 118 Atl. 530. So, as the case then stood, it was none of the plaintiff's concern what the defendant's claim was or whether she had any. The law did not require her to disclose her defense until she took the case.

The plaintiff produced two schedules of personal property which it claimed were inventories of the furnishings of the Ravine House. In connection with the testimony of the parties who made them, it offered them as evidence of title to the goods listed. It also offered to show that the goods replevied were included in these inventories. They were excluded and the plaintiff excepted. It is quite apparent from the record that the persons who made these inventories had no personal knowledge of the ownership of any particular article listed. They had to rely upon what was told them by others. The inventories, then, amounted to their recorded opinion upon the very question the jury was called upon to decide. Thus, in *Jaquith Co.* v. *Shumway's Estate*, 80 Vt. 556, 562, 69 Atl. 157, where the title to a certain horse was in question, a witness was allowed to testify that it belonged to the plaintiff. He had no personal knowledge upon that subject, his answer was based upon what others had told him, and it was held error to admit it.

The offer to prove by the witness Bradstreet and others that the property covered by the inventories belonged to the plaintiff stands in the same way. It was not shown that they had independent knowledge of where the title was, and the offer was properly excluded.

But the offer to show by the witness Woodbury that she assisted in making an inventory of "all the chattels in the Ravine House" was different. The possession of personalty is presumptively rightful and will support an action of replevin. *Cramton* v. *Chapman*, 85 Vt. 74, 75, 81 Atl. 231. The plaintiff here would make a *prima facie* case by showing that the property was in its possession and was taken from it without its consent. *Luce* v. *Brown, supra*. Bradstreet, Jr., testified that the inventory was a list of the "furnishings and equipment of the Ravine House." The offer under discussion was in effect an offer to show that the chattels listed were then in the plain-

tiff's possession. On the question of possession it was admissible. But the plaintiff's offer was defective and vitiating. It included the alleged fact that the witness placed valuations against all the various items listed. No attempt was made to show that she was competent to appraise property of that kind, and, without this, her valuations would not be evidence here. The inclusion in a single offer of this inadmissible evidence renders the exclusion of the whole offer proper. *Moncion* v. *Bertrand,* 98 Vt. 332, 340, 127 Atl. 371, and cases cited.

 Moreover, the plaintiff was unharmed by the exclusion. The defendant did not deny that the goods in question were once in the Ravine House and used there ostensibly as a part of the furnishings. She admitted that she took them, but she claimed to own them—a part by direct purchase and a part by gift from her husband. In the circumstances, further proof of the plaintiff's possession was not required.

 The inventories were subsequently admitted in evidence, but this was for a restricted purpose, to show an admission on the part of Bradstreet, Sr., that the articles which were claimed by the defendant by way of gift from him were in fact the property of the plaintiff. We cannot agree with the contention of the defendant that this restricted admission would cure any error that had been committed by excluding the inventories, though they went to the jury. But since the error, if any, was harmless, the exception is not sustained.

In its opening, the plaintiff called various witnesses and offered to show by them that Bradstreet, Sr., told them that all the property covered by the inventories belonged to the plaintiff. That this evidence would be admissible against him as an admission if he was here claiming title is apparent. It would also be admissible against the defendant as to all of the goods which she claims by gift from him for these goods were then in the hotel, the gift was not consummated, and she was in privity with him. *Alger* v. *Andrews,* 47 Vt. 238, 241; *Waterman* v. *Moody,* 92 Vt. 218, 231, 103 Atl. 325; *Pope* v. *Hogan,* 92 Vt. 250, 256, 102 Atl. 937. But these offers were made before it had appeared in the case that the defendant claimed title to any of the goods by way of a gift from Bradstreet, Sr. So, as the case then stood, the testimony, which was incompetent to

prove the fact stated, was foreign to any issue in the case. That it later on became relevant and admissible did not make its exclusion error. *Foot* v. *Woodworth,* 66 Vt. 216, 221, 28 Atl. 1034; *State* v. *Lapan,* 101 Vt. 124, 132, 141 Atl. 686.

█ The transcript shows that the plaintiff was allowed to show in rebuttal that Bradstreet, the elder, told the witness Keene, the witness Bradstreet, and the witness White that the property listed in the inventories belonged to the hotel company. This line of testimony was then admissible, and the plaintiff was given ample opportunity to introduce it. The inventories were admitted as evidence of such admissions by Bradstreet, Sr. So far as made to appear, the plaintiff had all the advantages therefrom that it was entitled to. Indeed, it had more. These admissions covered all the property in dispute. Some of this the defendant bought with her own money. Her husband had no interest in such property. He stood as a stranger to it, and his statements regarding it could not affect her title, and were inadmissible against her. 1 Elliott Ev. § 260; Stephen's Dig. 112; *Montgomery* v. *Brush,* 121 Ill. 513, 13 N. E. 230, 234.

█ We may say in passing that much of the evidence offered by way of books, balances, and inventories was properly rejected below for want of adequate verification. Such things do not prove themselves, and are not admissible until some competent person testifies to their authenticity and accuracy. This means, of course, some person who knows whereof he speaks. 1 Wig. Ev. § 793.

We find no prejudicial error in any ruling relating to the valuations which Bradstreet, Sr., placed in the inventory against the various articles replevied. The position taken by the plaintiff at the trial was that the values so fixed were not material, but the fact that he fixed them was the important fact. But the witness testified that each item replevied has in the inventory marked No. 3, a valuation in this Bradstreet's handwriting against it. So the plaintiff had the benefit of all that it claimed was important, and has nothing to complain of.

The plaintiff offered to show that, while all this property was at the Ravine House, it gave a mortgage on it to secure a corporate obligation, which mortgage Bradstreet, Sr., signed as an officer of the company. This was excluded and an exception saved.

The question raised by this exception has given the courts much trouble, and has resulted in decisions both ways on it. That self-serving declarations are not admissible, and that self-serving acts are equally inadmissible are familiar rules of evidence. Such declarations and acts, standing alone, are hearsay, merely. All agree that to make these admissible there must be an act or conduct equivocal in character to which they attach and give definite significance. The rule applicable to the question here presented seems to us to be that, when the title to property in one's possession is in dispute, every act that amounts to an exercise of the right of ownership of it is relevant and admissible in his favor. And this rule extends to statements made in connection with the possession of such property. True it is that one's extrajudicial statement that he is the owner of certain property, standing alone, is not admissible in his favor. *Comstock's Admr.* v. *Jacobs,* 86 Vt. 182, 188, 84 Atl. 568. But, when this statement accompanies and elucidates an equivocal act, it may be. The reason which lies at the foundation of this rule as here applied is that possession is evidence of ownership; but it is perfectly consistent with the fact of ownership in some one else. So, to make more significant the character of the possession proved and more definite the inference to be drawn therefrom, acts of ownership are admissible. This doctrine is indorsed by text writers of the highest standing. Stephen's Dig. Art. 5; 1 Elliott Ev. § 179; 3 Wig. Ev. § 1779. It was approved and applied in *Avery* v. *Clemons,* 18 Conn. 306, 309, 46 A. D. 323, where the title to a wagon was in dispute, and it was held to be proper to show that the party who had it in his possession claimed to own it, had it repaired, and tried to sell it; in *Roebke* v. *Andrews,* 26 Wis. 311, 317, where the title to certain cattle was in issue, and it was held that the defendant was not entitled to a charge that the plaintiff's assertions of ownership, made while he had possession of the cattle, were not evidence of his title; in *Amick* v. *Young,* 69 Ill. 542, 544, wherein it is said that it has always been held that one strong indication of ownership of personal property is exercising acts of ownership over it by one in possession of it, like making and paying for repairs on it, offering to sell it, etc., in *Chillingsworth* v. *Eastern Tinware Co.,* 66 Conn. 306, 33 Atl. 1009, in which the plaintiff claimed title to certain personal property derived from a stamping company, and it was held that the fact that the

company had given a chattel mortgage on the property was evidence of its title thereto; in *Dicken* v. *Winters,* 169 Pa. 126, 32 Atl. 289, 292, wherein it was held that the fact that one took out insurance on certain horses in his possession was evidence of his ownership; in *Abney* v. *Kingsland,* 10 Ala. 355, 44 A. D. 491, 492; in *Garr, Scott & Co.* v. *Shaffer,* 139 Ind. 191, 38 N. E. 811; and in *Nodle* v. *Hawthorn,* 107 Iowa, 380, 77 N. W. 1062.

It must be kept constantly in mind that none of these cases is authority for the proposition that the act or statement standing alone would be admissible as evidence of title; it is only when they accompany and give character to a possession that they are to be received.

This doctrine is not new to this Court. In *Moon* v. *Hawks,* 2 Aikens, 390, 392, it is said: "With respect to personal chattels, possession alone is presumptive evidence of property, and with nothing to oppose it, is sufficient; and when the possession is accompanied with the exercise of complete acts of ownership for a length of time, is strong evidence for the consideration of the jury, and requires satisfactory explanation."

In *Bullard* v. *Billings,* 2 Vt. 309, 313, it was held that a jury might infer, from the fact that personal property passed into the possession of one who used it as his own for two or three years without objection from its former possessor, a sale of it to the former. In *Eddy* v. *Davis,* 34 Vt. 209, 212, the dispute was over the title to six head of cattle which each of the parties claimed to own. The plaintiff gave evidence to show that he employed one Wright to buy cattle for him; that Wright bought the six head under this employment; that he employed Wright and another to drive the cattle to a certain pasture and to brand them with the initials of the man who owned the pasture; that this was done; and that the cattle so branded and turned out included those in dispute. Of this evidence the Court said: "Now the acts thus proven were clearly acts of ownership—the exercise of dominion over the property—such as the owners of cattle usually exercise over their own, but do not presume to use with cattle belonging to others. The marking of cattle with one's initials, or with any other mark which might serve to identify them, is clearly evidence to prove ownership. If all this was done by authority of the plaintiff, it was evidence in his favor."

The fact that the plaintiff mortgaged the property as specified in the offer or offers should have been admitted, and its exclusion was prejudicial error.

*Reversed and remanded.*

NOTE.—WATSON, C. J., sat at the argument, but deceased before the opinion was prepared.