RALPH E. WELLER v. CITY OF BURLINGTON.

*Municipal Corporations. Highways. Coasting.*

The plaintiff while travelling on a street in the defendant city was injured by a collision with a sled on which were several persons engaged in coasting. The city's charter conferred upon it authority over its streets, and compelled it to keep them in sufficient repair. Coasting was prohibited by an ordinance; but it was found that its practice, where and at the time the accident occurred, had been permitted to become a dangerous public nuisance, known to the mayor and the other officers, or which might have been so known, by the exercise of reasonable diligence; that it was also known to the greater part of the citizens and taxpayers, and approved of by them; that a majority of the board of aldermen expressly approved, though not by official action, of using the street for coasting, and that the minority did not object; *Held*, that the city was not liable, on the ground that, there being no express statutory liability, there was not an implied one, arising from the acceptance of the charter for injuries resulting from defective streets.

TRESPASS on the case. Plea, general issue. Trial by court, September Term, 1886, Chittenden County, TAFT, J., presiding. Judgment for the plaintiff. Reversed.

The case appears in the opinion.

*W. L. Burnap, H. Ballard* and *Robert Roberts*, for the defendant.

There is no other contract or obligation between the State and a municipal corporation accepting a charter than such as the charter implies. Dill. Mun. Corp. ss. 965, 980, 1000, 1018. See *Welsh* v. *Rutland*, 56 Vt. 228 ; *Hill* v. *Boston*, 122 Mass. 344 ; *Detroit* v. *Blackeby*, 21 Mich. 84 ; *Western College* v. *Cleveland*, 12 Ohio St. 375.

Corporate officers, though deriving their appointment from the corporation—as a convenient method of exercising a function of government—are the officers and servants of the public at large, and not of the municipality. There is therefore no corporate liability growing out of either nonfeasance or malfeasance on their part. Dill. Mun. Corp. 974, 975.

Granting, then, that this coasting was a nuisance, its suppression was a police duty, and not one in which the corporation, as such, had either any peculiar interest, or could derive any corporate benefit. *Faulkner* v. *Aurora*, 2 Am. & Eng. Cas. 520; *Schultz* v. *Milwaukee*, 49 Wis. 254.

New Jersey holds that, without a statute creating it, there is no liability even for acts of positive malfeasance on the part of a municipal corporation. *Pray* v. *Jersey City*, 32 N. J. L. 394.

See also *Hyde* v. *Jamaica*, 27 Vt. 443; and *Baxter* v. *Winoski Turnp. Co.* 22 Vt. 114; *State* v. *Burlington*, 36 Vt. 521.

Suppose the city had passed no ordinance on this subject, it would not have been liable upon the authority of *Hutchinson* v. *Concord*, 41 Vt. 271. See also *Ray* v. *Manchester*, 46 N. H. 59.

The following cases were also citied for the defendant:

*Levy* v. *Mayor*, 1 Sandf. 465; *Bailey* v. *Mayor of N. Y.* 3 Hill, 531; *Lorillard* v. *Monroe*, 11 N. Y. 392; *Mitchell* v. *Rockland*, 52 Me. 118; *Buttrick* v. *Lowell*, 1 Allen, 172; *Clark* v. *Waltham*, 128 Mass. 567; *Fisher* v. *Boston*, 104 Mass. 87.

*E. R. Hard* and *J. E. Cushman*, for the plaintiff.

In none of the reported cases involving the question of corporate liability for an injury caused in such a way as this was, has the fact of the almost unanimous approval of the community been developed; if it had, it may fairly be supposed that in

some, at least, of the cases in which such liability was denied, a different result would have followed.

The distinction between cities, existing by special charter, and ordinary towns, in respect to their obligations and liabilities, is recognized by all the authorities; the former being held to a much more extended liability than the latter.

1 Dill. Mun. Corp. ss. 22, 23, 26; 2 Dill. Mun. Corp. s. 961; 2 Add. Torts, 1298, 1300; Cooley, Const. Lim. 303, 304.

This distinction renders the case of *Hutchinson* v. *Concord*, 41 Vt. 271, and other similar cases in which towns have been held not liable, of no force as authorities in favor of the defendant in the present case.

The right of the plaintiff to recover upon the facts stated in this record is distinctly recognized and affirmed in the following cases: *Baltimore* v. *Marriott*, 9 Md. 160; *Taylor* v. *Cumberland*, 64 Md. 70; *Little* v. *Madison*, 42 Wis. 643. See *Stanley* v. *Davenport*, 54 Iowa, 463; 19 Am. L. Reg. 11.

In *Baltimore* v. *Marriott*, the injury was caused by ice in the street; and the court said: "The people of Baltimore, in accepting the privileges and advantages conferred by their charter, took them subject to the burthens and restrictions which were made to accompany them under the same charter. One of these burthens was the obligation to keep the city free from nuisances."

In *Taylor* v. *Cumberland*, 64 Md. 70, the plaintiff was injured by collision with a sled on which some boys were coasting in the street; and the court held that, the mere passage of an ordinance prohibiting nuisances, was not a complete discharge of the duty of the city.

Without any express legislation to that effect, cities are held liable for injuries to travellers, caused by defective highways within their limits; this liability being based, in the decisions, upon an implied duty resulting from power and authority of cities over the highways. While on the other hand, it is held

with equal unanimity, that *quasi* corporations are not so liable, without express legislation.

2 Dill. Mun. Corp. ss. 998, 999, 1017, 1018; Whart. Neg. ss. 956, 959; 2 Add. Torts, 1308; Cooley, Const. Lim. 305; Cooley, Torts, 655.

*Welsh* v. *Rutland*, has no application to the present case, because the village of Rutland, was only a *quasi* municipal corporation, (see charter, Acts, 1847, 100) and was so considered by the court.

In *Gordon* v. *Richmond*, Va. Ct. App. June, 1887, S. E. Rep. 727, the plaintiff in error, in passing along a street in Richmond, fell and was injured by reason of the want of repair of a sidewalk. The court said : " It is the duty of a municipal corporation, which by its charter has the power, to keep its streets and sidewalks in safe condition."

See *Rushville* v. *Adams*, 5 West. Rep. 682; 107 Ind. 475; *Kurr* v. *Troy*, 6 Cent. Rep. 493, 104 N. Y. 344; *Barnes* v. *District of Columbia*, 91 U. S. 540 (23 L. ed. 440); *Weightman* v. *Washington*, 66 U. S. 1 Black, 39 (17 L. ed. 52); *Nebraska City* v. *Campbell*, 67 U. S. 2 Black, 590 (17 L. ed. 241); *Mayor of N. Y.* v. *Sheffield*, 71 U. S. 4 Wall. 189 (18 L. ed. 416). See *Seele* v. *Deering*, 4 New Eng. Rep. 550; *Grove* v. *Ft. Wayne*, 45 Ind. 429.

In *Ray* v. *Manchester*, cited by the defendant, the injury was caused by boys coasting; but in that case, it did not appear that the defendant was an *incorporated city* nor that any ordinance on the subject of coasting had been adopted; nor did it appear that at the time of the accident, any one was coasting except the party who caused the fright of the horse; nor that they had been so engaged for any length of time previous to the accident; nor that any coasting in the street had been practiced within two weeks previous to the accident; nor that any of the residents of the city participated in coasting at any time; nor that any of the officials or inhabitants of Manchester ever approved of such coasting.

The opinion of the court was delivered by

ROWELL, J. This is an action on the case to recover for injuries received by the plaintiff while travelling on Main Street in the defendant city, by being run into by a sled on which some persons were coasting down the street.

The charter confers upon the city authority over its streets, and makes it its duty to keep them in suitable and sufficient repair, but imposes no greater duty in this behalf than is imposed upon towns in respect of their highways. It also provides for the raising of money for the performance of this duty, and empowers the city to prevent the practice in its streets of any amusements that have a tendency to injure or annoy persons passing thereon, or to endanger the security of property.

At the time in question there was an ordinance in force, forbidding under penalty coasting on any of the streets and highways of the city except such as the mayor and the board of aldermen should designate for that purpose, and Main Street had not been thus designated, so that coasting thereon was unlawful; and constables and all police officers were especially directed by the ordinance to see that its provisions were enforced.

The charter makes the mayor the chief executive officer of the city, and charges him with the duty of using his best efforts to see that the laws and the city ordinances are enforced, and that the duties of all subordinate officers are faithfully performed.

On the evening the plaintiff was injured, several persons others than those whose sled injured him were coasting down Main Street; and the street had been similarly used by many persons, mostly residents of the city, for three or more evenings within the last ten days; and the practice of coasting on the street had become and was a dangerous public nuisance. The use of the street for coasting was all the while known to the

mayor and the other officers of the city, or would have been known to them by the exercise of reasonable diligence on their part, and was also known to the greater part of the substantial citizens and taxpayers of the city, and approved of by them. It was also expressly approved of by a majority of the board of aldermen, though not by official action, and the minority of the board did not object to it.

A few days before the accident, the mayor publicly designated certain streets for coasting and sliding, and gave notice that coasting and sliding on all other streets of the city were forbidden by ordinance; but this was the only official action taken for its enforcement, and it is found that the city was negligent in this behalf; and the plaintiff claims that as the city is a municipal corporation proper as distinguished from a *quasi* or other public corporation, it is liable for injury resulting from such negligence.

It is said that this case is distinguishable from all others on this subject, in that here a majority of the citizens and taxpayers approved of the practice of coasting. But this makes no legal difference; for a city cannot be affected in such matters by the individual action of its citizens, any more than a town can be by such actions of its citizens; and it has always been held that a town cannot be thus affected.

It is true that there is a difference between cities, which are voluntary corporations existing by special charters, and towns, which are involuntary corporations, with privileges and duties more limited and restricted than those of cities; but does that difference go to the extent claimed here? for it is certain that a town would not be liable in a case like this.

The fundamental proposition of the plaintiff is, that inasmuch as the law confers upon the city, power and authority over its streets, it therefore by implication, imposes upon it a duty to prevent the nuisance of coasting thereon; and that for an injury

resulting from a negligent omission of such duty an action lies. In other words, that the duty creates the liability. And the argument is, that the grant to cities of corporate franchise is usually made only at the request of the citizens to be incorporated, and is supposed to be a valuable privilege, and a consideration for the duties imposed; that larger powers of self-government are given to them than to towns and counties; larger privileges in the acquisition and control of corporate property; special authority to use their streets for the peculiar convenience of their citizens in various ways not otherwise permissible; that a grant from the State of a portion of its sovereign power, and an acceptance thereof for these beneficial purposes, raised an implied promise on the part of the corporation to perform its corporate duties, not for the benefit of the State only, but for the benefit of every individual interested in their performance as well; and that, having accepted a valuable franchise on condition of performing certain public duties, they stand like private corporations aggregate, and are held to contract for the performance of those duties.

The decisions in this country on this subject are not uniform, and Judge Dillon groups them into the following classes: (1) Those in which neither chartered cities nor counties are held to an implied civil liability. (2) Those in which *both* chartered cities and counties are thus held for *neglect* of duty. (3) Those in which municipal corporations proper, such as chartered cities, are thus held for damage caused to travellers for defective and unsafe streets under their control, but which deny that such liability attaches to counties and other *quasi* corporations in respect of highways and bridges under their control. He says this last distinction has received judicial sanction in a large majority of the States where legislation is silent as to corporate liability, but that the reason for the distinction is not so satisfactory as could be desired. But in New England, he says, towns and cities are treated alike in this respect; and that there is no implied liability here upon either for injuries result-

ing from defective streets and sidewalks, but that such liability is wholly statutory. And in this he borne out by the cases, as will be seen by reference to *Hill* v. *Boston*, 122 Mass. 344, where they are largely collated and commented upon.

The New England idea is, that creating villages and cities by legislative action does not by implication impose upon them civil liability for the neglect of corporate duties in respect of those matters that are governmental in their nature, and which they administer as it were for and in behalf of the state, such as the control of streets and the like. While on the other hand, in respect of those matters that are not governmental in their nature, but are for the private advantage and emolument of the municipality, such as water-works and the like, they are held liable much as an individual or a private corporation aggregate would be.

But it is unnecessary to pursue the subject further, for we regard the question settled in this State by *Welsh* v. *the Village of Rutland*, 56 Vt. 228.

The only answer the plaintiff makes to that case is, that the village was only a *quasi* municipal corporation, and was so regarded by the court, and that the case was such as to render seemingly unnecessary the discussion as to the liability of such corporations in respect of such matters.

But the village of Rutland is as much a municipal corporation proper as the city of Burlington is, and its chartered powers and privileges are much the same, barring the form of government; and although in that case the chief justice speaks of *quasi* corporations as if the village was one, yet the court did not so regard it, and he evidently is speaking in a general way of public corporations as distinguished from private corporations aggregate, not intending to assign the village to that class of public corporations technically called *quasi* corporations, because on account of the limited number of their corporate powers, they rank so low in the scale of corporate existence.

Counties, school districts, and perhaps towns, are of this class. But cities and incorporated villages are nowhere called or treated as *quasi* corporations, but as municipal corporations proper, as having the most of corporate life ; but they are all public corporations, and agencies in the administration of civil government. And further on in the opinion the chief justice speaks of municipal corporations, and argues along the line of the law applicable to such corporations proper ; which shows that the case was not put upon the ground that the village was a *quasi* corporations.

As to its not having been necessary for the court to discuss the subject, it is sufficient to say that the case was treated as involving the question, and the point was fully discussed and decided ; and on this further discussion and consideration we are confirmed in the correctness of our former views, and re-affirm them.

Judgment reversed and judgment for the defendant.

POWERS, J., was absent.