LEO H. STONE *v.* PERCY E. WOOD.

October Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 6, 1932.

106

*Novak, Bloomer & Spero* for the plaintiff.

*Fenton, Wing, Morse & Jeffords* for the defendant.

Powers, C. J. The suit grows out of an intersectional collision between a fire truck and a Buick automobile at West and Wales Streets in the city of Rutland. The plaintiff, a captain of the fire department of that city, was going north on Wales Street, riding on a fire truck driven by another and responding to a still alarm. The defendant was driving the Buick east on West Street. The two vehicles reached the intersection of the streets at nearly the same time and were in collision at a point somewhat east of the center line of Wales Street and near the center line of West Street. This intersection is equipped with

an automatic traffic signal suspended nearly over the point of the collision, of the familiar type showing alternately red and green lights to those approaching. At the time in question the fire truck was approaching the intersection from the defendant's right, but was confronted with a red light in the signal. So, of course, the defendant was approaching from the truck driver's left, but was running on a green light. The fire truck was plainly designated as such, and was equipped with an electric siren and a bell operated by a rope, both of which, according to the plaintiff's evidence, were sounding. The defendant's car was moving at a rate somewhere between fifteen and forty miles an hour, and he never saw or heard the truck until just before the crash. The plaintiff sued for bodily injuries resulting from the collision; the verdict and judgment were against him; and he brings the case here on exceptions.

■■ As the plaintiff says in his brief, the main contention below concerned the respective rights of the parties at the intersection of the streets, and how those rights were affected by the "stop" and "go" signal referred to. Much emphasis is placed upon an alleged error in allowing the plaintiff to testify that this intersection was *controlled* by the lights referred to above. But the question containing the term "controlled," though objected to and allowed by the court, was not answered. So the exception saved to the ruling, in so far as that ground is concerned, is unavailing. *Fraser* v. *Blanchard,* 83 Vt. 136, 143, 73 Atl. 995; *Raymond* v. *Sheldon's Estate,* 92 Vt. 396, 400, 104 Atl. 106; *Ford* v. *Hersey,* 92 Vt. 405, 412, 104 Atl. 875. Of the other grounds upon which this exception is based, it is enough to say that substantially the same evidence, from an equally reliable witness (so far as shown) was subsequently admitted without objection. *People's Nat. Bank* v. *Brunelle,* 101 Vt. 42, 47, 140 Atl. 160; *Webster* v. *Canadian Pac. Ry. Co.,* 103 Vt. 460, 156 Atl. 524, 530.

■■ The defendant was called as a witness by the plaintiff. During his examination he was asked if he knew (a) the rules and regulations about the fire department; and (b) the state law with reference to the right of way at street intersections. Upon objection, these questions were excluded, and the plaintiff excepted. There was no error committed. There was nothing to show what rule or what regulation was referred to, or what it or they provided for. So there was nothing to indi-

cate that the defendant's knowledge thereof was pertinent to any issue in the case. If, perchance, the question referred to the ordinance hereinafter referred to, which was later on exhibited to the court, this fact would not affect the ruling which was, when made, without error. *Ravine House Co.* v. *Bradstreet*, 102 Vt. 370, 376, 148 Atl. 481, and cases cited. The defendant was bound to know the valid ordinances of the city. He was bound to know that a right of way was given to the plaintiff by statute. No. 70, Acts of 1925, § 68. His ignorance of these would avail him nothing in his defense. Nor would his actual knowledge of them increase his responsibilities so far as here involved. The action is for simple negligence. If it had been for gross or so-called wilful negligence, or if it had appeared that the plaintiff claimed to recover exemplary damages, the situation might be different. Nothing of the kind is shown by this record.

■ The exception saved when Ray Leonard, the chief of police of the city, was allowed to testify to the functions and meaning of the traffic signal is without merit. He described the mechanical installation of the signal, and explained that the green light meant "go," and the red light meant "stop." This was hardly more than confirmation of what the plaintiff had testified to, and inasmuch as the word "go" appeared on the green lens and the word "stop" appeared on the red lens, the chief's statement added nothing of any substantial consequence to the evidence on the subject of the signal's meaning. Then, too, these stop and go signals have become so familiar in locations where traffic is heavy that their meaning is a matter of common knowledge, and courts may and should take judicial notice of their purpose and meaning and tell the jury about it. Nor was there harmful error in allowing this witness to testify that the traffic light was erected at his direction. Though he was appointed by the city and was its representative and servant, he was, in a very real sense, a public officer charged with the duty of conserving the public peace and safety. So the presumption is that when he erected the signal or gave directions to that end, he was acting officially and in the line of his duty, *New York, etc., R. R. Co.* v. *Fieback*, 87 Ohio St. 254, 100 N. E. 889, 43 L. R. A. (N. S.) 1164, 1168. As the law stood at the time in question, the city had statutory authority to make special regulations regarding the use and operation of motor

vehicles therein. No. 192, Acts of 1925; No. 71, Acts of 1929. We note that the last-named act was so amended by No. 84, Acts of 1931, as to expressly include traffic lights, but we think the terms of the Act of 1929 were broad enough to cover them. Had there been no evidence as to how the signal happened to be there, its character, appearance, and manifest purpose, together with the length of time it had been there (about two years), would warrant the inference that it was erected by authority.

 The plaintiff offered in evidence section 11 of chapter 15 of the ordinances of the city of Rutland, which provides that "in case of any alarm of fire" it shall be the duty of drivers of vehicles in a street in which fire apparatus is approaching to move such vehicle, without delay, to the right or left of the center of such street, so as to give free passage to such apparatus. This offer was rejected, and the plaintiff excepted. The ordinance had no application to the defendant as he approached the intersection. There was no fire apparatus "approaching" in the street that the defendant was traveling. So assuming that the siren and bell on the truck were such an "alarm" as the ordinance contemplated, the ordinance applied to the defendant only after he entered the intersection area and it was then too late to make compliance with it effective in any way; and his non-compliance did not proximately contribute to the collision.

Throughout this discussion, we have left untouched the question how, if at all, the red light affected the fire truck, and how far, if at all, the green light protected the defendant. These questions are not raised by the record before us.

*Judgment affirmed.*

NOTE. When this case was argued it was assigned to Mr. Justice Willcox. Upon his retirement from the Bench and at the October Term, 1931, it was taken over by the Chief Justice.