JOHN FERRARO *v.* EDWARD I. EARLE ET AL.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 7, 1933.

*Novak & Bloomer* for defendant Earle.

*Jones & Jones* for the plaintiff.

GRAHAM, J. On August 4, 1929, the defendant Earle was driving a combination fire truck north on Wales Street in the city of Rutland; at the same time the defendant Wood was driving a Buick automobile east on West Street. The two vehicles came into collision at the intersection of these two streets, and the plaintiff, who was a guest passenger in the Wood car, was injured. When the trial began there was a third defendant (the captain of the fire department, who was riding on the truck), but as to him the plaintiff entered a voluntary discontinuance. There was a verdict in favor of defendant Wood; and a verdict against defendant Earle, who brings the case here on exceptions.

At the close of the plaintiff's case, the defendant Earle rested, and moved for a directed verdict on the grounds: (a) That he was operating the fire truck as an officer of the city in connection with its governmental function and so was immune from

liability for negligence; (b) that it was not negligence *per se* for him to drive the fire truck into or through the intersection with a stop or red light of a traffic signal against him; and (c) that the evidence did not warrant the submission of the issue of his negligence to the jury.

It is undisputed that Earle was at the time of collision operating a fire truck belonging to the city of Rutland and in the course of his employment in the city fire department, and was responding to a still alarm. The defendant does not cite any decision, either from this Court or from any other court, which holds, either in terms or by analogy, that a fireman is exempt from liability for acts of negligence, or misfeasance, in the performance of his ministerial duties. For support for his contention, the defendant seizes upon a single general statement in *Skinner* v. *Buchanan,* 101 Vt. 159, 162, 142 Atl. 72, 73, but which must be removed from its context to give even the semblance of such support. After citing three of our former cases (*Bates* v. *Horner,* 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824; *Daniels* v. *Hathaway,* 65 Vt. 247, 26 Atl. 970, 21 L. R. A. 377; and *Robinson* v. *Winch,* 66 Vt. 110, 28 Atl. 884), that opinion states: "They (those cases) hold that municipal officers are not liable to private persons for their conduct whether of omission or commission, if they keep within the scope of their official duties and authority." A reference to the cases cited shows clearly that the statement was made concerning duties, the performance of which requires the exercise of judgment and discretion, or duties which are of a quasi judicial nature. In *Bates* v. *Horner,* 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824, the defendants, who were trustees of a village charged with the duty of maintaining the public streets, by vote, purchased a ledge outside the village limits and there located a stone crusher to provide stone to be used on the streets. The defendants did not have to do with the actual operations of the crusher. The plaintiff's horse became frightened and unmanageable by reason of the noise of the crusher, and the plaintiff was injured. It was held that since the defendants did not perform any duties except strictly official acts, they were not liable. In *Daniels* v. *Hathaway,* 65 Vt. 247, 26 Atl. 970, 971, 21 L. R. A. 377, it was held that the selectmen of a town are not personally liable for an injury sustained through a defect in a public highway in that town, for the reason that duties in reference to the maintenance and repair of

highways are of a quasi judicial nature. In that case it is said: "The liability of public officers to an individual for their negligence in the discharge of an official duty depends entirely upon the nature of the duty in the performance of which such negligence is alleged." And again: "Discretion to a certain extent implies judicial functions; and, when officers act in such a capacity, they are not liable to any private person for a neglect to exercise these powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be imputed, and they keep within the scope of their official duties and authority." The case of *Robinson* v. *Winch*, 66 Vt. 110, 28 Atl. 884, is not to the contrary.

It is a general rule that a municipal officer is personally liable to private persons for injuries caused by his negligence or misfeasance, when the duty imposed upon him is ministerial and not judicial or discretionary. *Moynihan* v. *Todd*, 188 Mass. 301, 74 N. E. 367, 108 A. S. R. 473; *Downes* v. *Hopkinson*, 67 N. H. 456, 40 Atl. 433; 22 R. C. L. 484, § 162; McQuillin, Mun. Corp. § 537; *Rowley* v. *Cedar Rapids*, 203 Iowa, 1245, 212 N. W. 158, 53 A. L. R. 375. The rule applies to a fireman in the performance of his duties. *Florio* v. *Jersey City*, 101 N. J. Law, 535, 129 Atl. 470, 472, 40 A. L. R. 1353, and note at page 1359; *Skerry* v. *Rich*, 228 Mass. 462, 117 N. E. 824. In *Florio* v. *Jersey City, supra,* the court said: "We think that a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasances in the performance of their public duties." The motion for a verdict on the ground of immunity as a public official was properly overruled.

At the intersection of Wales and West Streets there is an automatic traffic signal. The lights of this signal show alternately red and green to those approaching. This is the same signal and the same accident described in *Stone* v. *Wood*, 104 Vt. 105, 108, 157 Atl. 829. When the fire truck approached the intersection the red or "stop" light was displayed toward it; at the same time the green or "go" light was displayed east and west on West Street. The two vehicles reached the intersection at nearly the same time; Earle, the driver of the fire truck,

approached from Wood's right, but he drove through on a red light; Wood approached from Earle's left, but entered the intersection to drive through on a green light. One of the main questions in the case was as to the effect of the red light on the right of way which otherwise concededly belonged to the fire truck. Section 68, No. 70, Acts of 1925. This statute provides, *inter alia,* that "street cars and plainly designated ambulances, police department and fire department vehicles shall at all times have the right of way over other vehicles, and provided, further, that wherever traffic officers are stationed, they shall have full power to regulate traffic irrespective of the foregoing provisions."

 The plaintiff contended below, and the trial court ruled, that the traffic signal which had been erected for the special regulation of traffic by the city authorities under statutory authority (see *Stone* v. *Wood,* 104 Vt. 105, 108, 157 Atl. 829) constituted a "traffic officer" within the terms of section 68, No. 70, Acts of 1925. It is now urged before us that the statutes should receive that interpretation. The statutory right of way is expressly granted to the favored classes of vehicles to meet the demands of imperative public necessity. This statutory right of precedence is not to be repealed except by the clear voice of the Legislature, or unless commanded by the application of well-recognized rules of statutory construction. No such situation confronts us. The term "traffic officer," as used in the statute, clearly designates a natural person who is capable of exercising a judgment and discretion in the direction and control of traffic to meet the exigencies of particular situations; it has no reference to a mechanical contrivance which is so constructed and maintained as to show alternating lights at regular and unvarying intervals, or to any other automatic device.

 While the fire truck was favored with the statutory right of way and the act of driving it through the intersection against a red light did not, of itself, constitute negligence as a matter of law, it does not follow that Earle was privileged to proceed in disregard of the rights of others. *Jasmin* v. *Parker,* 102 Vt. 405, 416, 148 Atl. 874, and cases cited. The right must be exercised in a reasonable manner in view of the circumstances. It remains to consider whether the evidence made the question of Earle's negligence an issue for the jury. His conduct must be judged by the situation and conditions confronting

him. He was confronted with the duty of the due performance of his public service, and the apparent exigency of the occasion which called for haste to bring the services of men and equipment to the place where property or lives, or both, might be exposed to the hazards of fire; he was approaching an intersection with the right of way for him, but with a red light against him. The red light was a warning to him that traffic on West Street might be proceeding into the intersection without knowledge of the approach of the fire truck and in reliance upon the protective invitation of the green light. The mandate of the statute (subdivision III, § 68, No. 70, Acts of 1925), applicable to the operator of a vehicle of any kind, is that "All intersecting highways shall be approached and entered slowly and with due care to avoid accident." Due care is care commensurate with the circumstances calling for its exercise. The precautions to be taken increase with the hazards. The situation confronting the defendant Earle required him to be very alert and watchful to avoid injury to others, that is, he was bound to exercise the care of a prudent person, who was driving a fire truck to a fire at the place and under the circumstances here disclosed. Did the defendant's conduct meet the requirements of the rule as a matter of law?

Earle approached the intersection at a speed of about 20 miles an hour, and a distinctive warning of his approach was given by the sounding of an electric siren and the ringing of a bell. There was evidence tending to show that Earle had an unobstructed view through the windows of the Terrill building, so-called, of cars approaching the intersection from the west. He did not see the Wood car until after he had entered the intersection; it was then coming around another car which was parked in the center of the street and just west of the intersection. The Wood car was traveling at a rate of speed from 15 to 40 miles an hour. The cars came into collision about under the signal light, east of the center of Wales Street and near the center of West Street. We think that the evidence made it a jury question, whether the defendant Earle was negligent in respect of keeping a proper lookout for cars approaching from the west, and in respect of the speed at which the fire truck was driven into the intersection. The motion for a directed verdict was properly denied.

The court charged the jury, subject to defendant's exceptions, that the traffic signal had the same operation and effect respecting the regulation of traffic at the intersection as if a traffic officer were stationed there to regulate traffic, and that the driver of the fire truck was under the duty to obey the command of the traffic light in the same manner as if there had been a traffic officer stationed at that point. The question raised by these exceptions has been considered in our discussion of the defendant's motion for a verdict, and what we have there said will suffice to show that the charge in this respect was erroneous, and necessitates a reversal and new trial.

*Judgment against defendant Earle reversed, and cause remanded.*