## CLAIN v. CITY OF BURLINGTON.

### No. 90, Docket 22481.

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1952.

Decided Feb. 6, 1953.

———◆———

Bernard J. Leddy, Leary & Leddy, Burlington, Vt., for appellant.

A. Pearley Feen, Paul D. Sheehey, and Philip W. Hunt, Burlington, Vt., for appellee.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing the complaint under Fed.Rules Civ.Proc. rule 50(b), 28 U.S.C.A., notwithstanding a verdict for the plaintiff. The action was brought in the U. S. District Court because the plaintiff is a citizen of the State of Washington and the defendant is a municipal corporation of Vermont. The complaint alleged that the plaintiff had been injured, while a passenger in a motor car in the streets of Burlington, when the car collided at a street crossing with a "silent policeman" which was being repaired, but which the defendant failed properly to light or otherwise to guard. The "policeman" was a block of concrete two feet high, about four feet square at the bottom and three feet at the top; and when finished, it was to carry a metal holder of four lights that flashed automatically to guide traffic along either street in turn. It was also to carry at its base a white light, always lighted, that would illuminate the streets over a circle twenty-four feet in diameter. The concrete block had been finished and was awaiting the hardening of the cement before the holder was put in

place; and meanwhile a single white electric bulb, 100 watts in power, had been set on top of it, at the end of a twelve inch pole. The accident happened at night, although the bulb was lighted. The jury found a verdict for the plaintiff on the ground that the block as lighted was a negligent obstruction in the driveway, for which the city was liable; we are to decide the case on the assumption that this finding was justified.

■ Like most of the states, Vermont early adopted the doctrine that municipalities, being administrative units of the State, shared the State's immunity from suits for negligence in the discharge of their statutory powers. However, as time went on, villages and cities began more and more to dispense to their residents for pay services that individuals had theretofore supplied—so far as they had existed at all —either severally or by mutual associations; and the courts began to think it unreasonable to treat such activities as though they were the same as the older and more vital services of protection against violence and fire, maintenance of highways, and the like. Injuries done to an individual in performing such functions were so like the same services, performed by "public utility" corporations, that it seemed intolerable not to treat recoveries for the negligent exercise of the powers granted as a cost of the service rendered. Thus arose a distinction between "governmental," and "proprietary," activities, that, as might be expected, it has proved difficult to apply. For instance, if a city supplies its residents with light or water or heat, a priori there would seem to be as much reason to treat these as an exercise of powers granted by the State as to which the city is immune from suit, as when it provides protection to property from fire, or maintains convenient streets. Indeed, were one to go far enough back, the "governmental" functions were themselves left to selfhelp, or at least to mutual enterprise. Since the distinction is therefore conventional, the case at bar is especially proper for the application of the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and we need not look beyond the de-

cisions of Vermont itself, whose Supreme Court has very often considered the matter.

In Winn v. Village of Rutland, 1880, 52 Vt. 481, the plaintiff sued the village for damaging his land negligently by building a sewer across it. The village justified under its statutory authority; but the court held that the defendant's right of entry upon the land was conditioned upon proper performance of the prescribed work, and that, if the condition was not fulfilled, the authority was not an excuse. There being no occasion to discuss the nature of the municipal function involved, the court did not do so. In Welsh v. Village of Rutland, 1883, 56 Vt. 228, the plaintiff, who was passing on the sidewalk, slipped upon ice near a hydrant that was part of the fire protection of the village. The hydrant had frozen and a fireman had let water from it spill out in thawing it out. The court denied the claim because the hydrant was part of the apparatus installed by the village in the exercise of a "governmental function," although, as it noticed, the water-works served both "public and private uses." On the other hand, in Wilkins v. Village of Rutland, 1889, 61 Vt. 336, 17 A. 735, the village was held liable for damage caused by a "water-box" that was part of a system both to supply individuals with water and to protect the village against fire. The box was used to control the water supply to a private house, and the court was solicitous to find that the damage arose from a defect in the box itself; not because it had been carelessly set so as to form an obstruction in the street. Apparently, if there had been no defect in the "water-box," the plaintiff would not have succeeded; but there was no discussion of "governmental," as distinct from "proprietary functions." In Bates v. Village of Rutland, 1890, 62 Vt. 178, 20 A. 278, 279, 9 L.R.A. 363, a stone-crusher, being used to prepare the surface of a street, scared the plaintiff's horse; and the complaint was dismissed because repairing and maintaining the streets is an exercise of the "powers of government." In Morgan v. Village of Stowe, 1918, 92 Vt. 338, 104 A. 339, L.R.A.1918F, 1000, the plaintiff ran into a hydrant set too far out in the street. The water system was

534

used, **not** only for fire protection, but **to** supply residents with water, so that the situation was the same as in Welsh v. Village of Rutland, supra, 56 Vt. 228. However, the court apparently felt it necessary to express a distinction that it had only implied before: i. e., that the test was whether the offending object was used only for **"a** public and governmental" act. Sanborn v. Village of Enosberg Falls, 1914, 87 Vt. 479, 89 A. 746, 747, is almost identical; Latulippe v. City of Burlington, 1919, 93 Vt. 434, 108 A. 425, concerns a defect in a sidewalk and adds nothing; Stone v. Wood, 1932, 104 Vt. 105, 157 A. 829, is important only for the dictum that installing traffic signals is a part of the "duty of conserving public peace and safety".

None of these decisions touched the situation where the offending object might be used in the exercise either of a "governmental" or of a "proprietary" power, and Boguski v. City of Winooski, 1936, 108 Vt. 380, 187 A. 808, did involve just that. The City of Winooski had installed a water system both for fire protection and to supply the residents with water. On occasion the system furnished an inadequate head of water to put out fires, and the city availed itself of an independent reservoir, maintained by the American Woolen Company. The water for this reservoir was taken from the Winooski River, and was not fit to drink; but the City set a valve in the discharge pipe of the reservoir which was ordinarily kept closed, but which was opened when high pressure was needed during a fire. Through the negligence of the city's employees this valve was left open so that water from the reservoir flowed into the service mains that supplied the houses; and one of the residents drank the water, contracted typhoid fever, and died. The village was held liable because, although its use of the valve to put out fires was assumed to be "governmental," it was not using the valve for that purpose when the water flowed from the reservoir into the service main. It would seem that the point need not have been decided, because the village had abandoned any use of the reservoir and the valve had ceased to have

any "governmental" use, but the court plainly meant to put its decision upon the ground that we have mentioned. Lemieux v. City of St. Albans, 1942, 112 Vt. 512, 28 A.2d 373, Farmer v. Poultney School District, 1943, 113 Vt. 147, 30 A.2d 89, and Griswold v. Town School District of Weathersfield, 1952, 117 Vt. 224, 88 A.2d 829, do not add anything, save as they show that the court has shown no indication of any tendency to depart from its earlier decisions.

In the case at bar the plaintiff cannot successfully rely upon either the block itself, or upon the inadequacy of the bulb properly to light it. The block was put up to make travel in the street safer and more convenient; and it is unnecessary to argue that that was an exercise of a "governmental" power. Indeed, the plaintiff does not argue the contrary. Moreover, if we assume, as the verdict requires us to do, that the bulb was inadequate, there is no difference between making a street safe at night by lighting up an obstacle, and freeing it of an obstacle. Each is the exercise of a "governmental" power: i. e., making the street safe for travel. There remains only the fact that the bulb got its current from a lighting system, which was supplied both to the streets and to private houses. However, it was not the current, but the bulb, that was at fault; and the bulb was not used in the exercise of any "proprietary" power, but to protect travel on the street. That alone is an answer to the plaintiff's argument; but she is in no better position, even though we were to treat the current as part of the offending object, for even so, whatever current fed the bulb was itself used "governmentally." Finally, even were we to push the reasoning to the fantastic extreme of treating the generating plant as a contributing offending object, the plaintiff would still be met by the doctrine of Boguski v. City of Winooski, supra, 108 Vt. 380, 187 A. 808, that when an object can be used either "governmentally" or "proprietarily" the liability depends upon its use at the time; for we must regard the plant also as being used "governmentally," at least in so far as it produced that part of

the current that lighted the bulb. Turn as we will, we can find no aspect of the situation which will support the plaintiff's claim.

 Judgment affirmed.

FRANK, Circuit Judge (dissenting).

The Vermont Supreme Court has disclosed a marked ingenuity in limiting the harsh, unjust, undemocratic, and anachronistic immunity of municipalities from tort liability. I think that, in line with its decisions, that court would hold the City liable here. In reaching that conclusion, I have in mind facts which my colleagues' opinion does not mention.

Outstanding is the evidence (undeniably sufficient to support a verdict on the subject) that the white light, the inadequacy of which caused plaintiff's injury, was supplied by the City, to light up the street and as part of its street-lighting service, not at all as part of its street-traffic control system (which includes the red and amber lights on the "silent policeman"). When that "policeman" is in good order, it contains a white light bulb used solely for street illumination; the white light bulb present when this accident happened was a temporary substitute, and thus used for street lighting alone. Accordingly, the City's negligence had nothing to do with its "governmental" duty to regulate traffic on its streets —for negligence in the discharge of which it is not liable[1]—but related entirely to street lighting. This fact is crucial. For although the maintenance of streets is "governmental," the lighting of streets is not.

The Vermont Supreme Court has often said that, if the legislature imposes a duty to perform a function, then the function is "governmental" and no liability attaches for failure to perform or negligence in the performance of that function, but that if the function although authorized is not obligatory—i. e., is voluntarily assumed—then it is "proprietary" and liability for negligence in performing it ensues.[2] Thus the construction or maintenance of highways, being an imposed duty, is "governmental," but not the construction or maintenance of sewers.[3] The basis of the distinction is that the "construction and maintenance of sewers is not considered a governmental function but a power conferred upon a municipal corporation for its own benefit and that of its citizens, although its exercise may conduce to the general good."[4] In Weller v. City of Burlington, 60 Vt. 28, 35, 12 A. 215, 219, the court put in this category "water-works and the like". In Morgan v. Village of Stowe, 92 Vt. 338, 341, 104 A. 339, L.R.A.1918F, 1000, the court said the same of lighting plants.[5]

For that reason, and because in dealing with municipal liability for torts the Vermont court has cited and relied on Massachusetts cases,[6] I think that Dickinson v. City of Boston, 188 Mass. 595, 75 N.E. 68, 1 L.R.A.,N.S., 664, is apposite here. There it was held that, as a City has no "public duty" to light its streets, it is not liable for

1. As however, there are no Vermont decisions absolving a city for negligence relative to a "silent policeman," it may be that Vermont will follow DeLahunta v. City of Waterbury, 134 Conn. 630, 59 A.2d 800, 7 A.L.R.2d 218. For the Vermont Supreme Court in these municipal liability cases frequently cites and applies the rulings of other state courts.

2. See Winn v. Village of Rutland, 52 Vt. 481, 491; Weller v. City of Burlington, 60 Vt. 28, 34–35, 12 A. 215; Wilkins v. Village of Rutland, 61 Vt. 336, 337, 339, 17 A. 735; Bates v. Village of Rutland, 62 Vt. 178, 181, 182, 20 A. 278, 9 L.R.A. 363; Stockwell v. Town of Rutland, 75 Vt. 76, 79, 53 A. 132.

3. Sanborn v. Village of Enosburg Falls, 87 Vt. 479, 482, 89 A. 746.

4. Sanborn v. Village of Enosburg Falls, 87 Vt. at page 482, 89 A. at page 747, citing Winn v. Village of Rutland, 52 Vt. 481. See also Weller v. City of Burlington, 60 Vt. 28, 34, 12 A. 215; Stockwell v. Town of Rutland, 75 Vt. 76, 79, 53 A. 132.

5. Cf. Valcour v. Village of Morrisville, 104 Vt. 119, 131, 158 A. 83.

6. See, e.g., Weller v. City of Burlington, 60 Vt. 28, 34–35, 12 A. 215 (referring to the "New England idea" in these cases); Farmer v. Poultney School Dist., 113 Vt. 147, 150, 30 A.2d 89; Bates v. Village of Rutland, 62 Vt. 178, 181, 182, 20 A. 278, 9 L.R.A. 363.

536

omitting to do so, yet if it does light them it is liable for negligence in such lighting. See also Aiken v. City of Columbus, 167 Ind. 139, 78 N.E. 657, 12 L.R.A.,N.S., 416; City of Galveston v. Rowan, 5 Cir., 20 F.2d 501, 502; Saulman v. Mayor, etc., of Nashville, 131 Tenn. 427, 175 S.W. 532, L.R.A.1915E, 316; cases cited in 19 A.L.R.2d 349 et seq.

If, then, the City authorities had decided that all streets, or in particular the street on which plaintiff was injured, should go unlighted, the City (for reasons above stated) would have incurred no liability to plaintiff. The City authorities, however, did decide to light the streets, this street included, and to put a street light on this particular "silent policeman." For such street illumination, the City authorities arranged with the City's Electric Light Department (managed by a separate Board of Light Commissioners). Although this Department also supplied electric current for the red and amber traffic signals on this "policeman," the evidence shows that this white light was for street illumination only. Here we have a "dual function" situation much like that in Boguski v. City of Winooski, 108 Vt. 380, 187 A. 808.

Suppose now that, instead of arranging as it did with the Electric Light Department, the City had contracted with the privately-owned Green Mountain Power Company (which, according to the evidence, supplies electric light to many of this City's inhabitants) to furnish the white street-light on this "policeman," but not the red and amber traffic-lights; that the company had been negligent in the way it furnished that white light (just as the City was here); and that plaintiff's injury had been the consequence. In such circumstances, I think the privately-owned company would clearly have been liable to plaintiff. Here the City, in its "proprietary" capacity (as a business rival of the Green Mountain Power Company), undertook to supply this street lighting. Because it acted in that capacity, I think that, according to the Vermont decisions, it was liable, just as, in the supposed case, the company would have been.

Wilkins v. Village of Rutland, 1889, 61 Vt. 336, 17 A. 735, closely resembles the instant case. There the village owned and managed, through water commissioners, an aqueduct for supplying water to its inhabitants for their use, and also to the City itself for extinguishing fires. The court said that the village had the right to lay aqueduct pipes through the village streets. It did lay a pipe along a certain street "and placed therein, within the limits of the highway, in the spring of 1884, a water-box, to be used in letting on and shutting off the water, to supply a customer." In 1886, the cap of this water-box, from some cause, came to protrude three inches above the ground. Plaintiff's intestate, when driving his carriage in the highway at that point, was thrown from the carriage and killed, "by the wheel of his carriage getting caught and broken on the cap of the water-box." Plaintiff sued and recovered judgment against the village, which was affirmed on appeal. The Vermont Supreme Court observed that the village was liable for negligence in connection with the exercise of its power to own and manage the aqueduct; "it being a right and privilege voluntarily assumed for its own benefit, and not a municipal duty imposed by law." The court said that "the cause of the accident was the improper condition of the water-box * * *. This places the neglect upon the defendant as the owner and manager of the aqueduct, and not as having the supervision of and charged with the duty of repairing the highway at that point. For an injury caused by its failure to repair the highways within its limits the defendant is not liable, but for an injury caused by its failure to properly maintain its aqueduct it is liable. Welsh and Wife v. The Village of Rutland, 56 Vt. 228. It is doubtless true, as contended for the defendant, that the water-box, in its situation at the time of the accident, was an obstruction to the highway at that point, but it was an obstruction which it was the duty of the defendant, as the owner and manager of the aqueduct to remove, and not its duty as having control of the repairs on the highways within its limits. If the aqueduct had been owned and managed by a third person, and if the defendant had, under the law, been liable to the plaintiff because it had failed to re-

move the obstruction caused by the water-box, under the decision of this court the defendant could have recovered what damages and costs it might have been compelled to pay the plaintiff of such third person, who caused the obstruction. On the authority of Mann v. [Central Vermont] Railroad Co., 55 Vt. 484, the plaintiff, on the facts found, could have recovered the damages sustained, in a suit directly against such third person. The defendant, standing in the place of such supposed third person, it follows that the plaintiff is entitled to recover the damages, which she has sustained of it, in this suit."

I see no signs of a recession by the Vermont Supreme Court from the position it took in 1889 in Wilkins v. Village of Rutland. On the contrary, that court, when there has been a doubt in such a case, has resolved it against the municipality; Boguski v. City of Winooski, 1936, 108 Vt. 380, 389–390, 187 A. 808, is illustrative.