Wade DECKER, Plaintiff,

v.

Michael FISH, individually and in his capacity as a Colchester police officer; Matthew Hill, individually and in his capacity as a Colchester police officer; and the Town of Colchester, and as individuals, each of them, Defendants.

No. 2:99–CV–238.

United States District Court,
D. Vermont.

Oct. 25, 2000.

Robert Andres, Burlington, VT, for Plaintiff.

Nancy Goss Sheahan, Kevin John Coyle, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff Wade Decker ("Decker") brought this action for damages against police officers Michael Fish ("Fish") and Matthew Hill ("Hill") and the Town of Colchester ("Colchester") arising from two incidents of alleged police misconduct occurring on August 2 and August 9, 1997, in Colchester, Vermont. In his complaint, Decker alleges numerous violations of his civil rights under the United States Constitution and state law. The defendants have moved for summary judgment on all of Decker's claims, dismissal for failure to prosecute or to render a default judgment against Decker. Meanwhile, Decker has moved for reconsideration of an order by this Court to exclude testimony from his expert witnesses.

For the reasons set forth below, the Defendant Colchester's motion for summary judgment is granted, Defendants Fish and Hill's motion for summary judg-ment is granted in part and denied in part, and Decker's motion for reconsideration is denied. Defendants' motions for failure to prosecute or to render a default judgment against Plaintiff are denied.

## I. Facts

For purposes of the two motions for summary judgment, the following facts are undisputed or taken in the light most favorable to Decker, the nonmoving party.

On August 2, 1997, responding to a noise complaint, but without a warrant or permission of the occupants, Defendant Michael Fish entered the dwelling at 16 Heritage Drive in Colchester, Vermont, where Decker was attending a party. Once inside, Fish encountered Decker in the basement of the house, at which point Decker asked Fish how he got in the house and demanded that he leave. Fish responded by suggesting that he and Decker "settle things outside," and threatening to take Decker into custody. Decker remained inside, however, and Fish eventually left without further incident.

One week later, on August 9, 1997, Officer Fish, this time accompanied by co-defendant Officer Hill, returned to the residence at 16 Heritage Drive, responding to another noise complaint. Like the previous week, Decker was present attending a party. Fish again entered the residence without a warrant or permission of any of its occupants. Once inside, Fish arrested one of the partygoers, Joshua Dewey, and proceeded to escort Dewey to his police cruiser.

As Fish was escorting Dewey to the cruiser, Decker came out of the house and asked Fish why Dewey was being arrested. Fish did not respond. Decker repeated his question several times until Fish, apparently in an attempt to arrest Decker as well, grabbed Decker and a struggle ensued. During this struggle, which lasted at least several minutes, Fish threw Decker to the ground, sprayed him with mace repeatedly, and hit his head

against a car. Officer Hill, attempting to help Fish gain control of Decker, used his baton to choke and strike Decker. Once the officers had Decker subdued and in handcuffs, they sprayed him again with mace and hit him again with a baton.

Decker was eventually prosecuted for two counts of aggravated assault and one count of hindering arrest. After a two-day trial, a jury convicted him on the hindering charge and acquitted him on both of the assault charges.

Brian Lafond, one of the occupants of the house where these incidents took place, testified at Decker's criminal trial that several years before the events that gave rise to this lawsuit, Lafond was repeatedly pulled over by Defendant Officer Fish. In response, Lafond filed two harassment complaints (presumably with the Town of Colchester). To Lafond's knowledge, no action was ever taken on those complaints.[1]

## II. Discussion

### A. Summary Judgment standard

Summary judgment should be granted when there is no dispute as to material facts, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact remains for trial. *See Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). The evidence of the nonmoving party should be taken as true, and all justifiable inferences should be drawn in its favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505

(citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). If, upon examination of the record, the Court finds that any material issue remains in dispute, the motion for summary judgment must be denied. *See Gibson v. American Broadcasting Companies,* 892 F.2d 1128, 1132 (2d Cir.1989).

### B. Defendant Colchester's motion for summary judgment

#### 1. Decker's federal claims

Decker seeks to hold Colchester vicariously liable for the actions of Officers Fish and Hill on a theory of respondeat superior. With regard to Decker's § 1983 claim,[2] however, municipal liability may not be based on respondeat superior alone. *See Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989). In order to hold Colchester liable, Decker must show that Colchester had an official policy or custom which deprived Decker of a federal right. *See Zahra,* 48 F.3d at 685. Furthermore, a single act taken by a municipal employee below the policymaking level cannot generally be used to infer the existence of an unconstitutional policy or custom. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Moreover, there must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation; i.e., the plaintiff must demonstrate that the municipality was the "moving force" behind his claimed injury. *See Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In this case, there has been no evidence presented that would allow the Court to conclude that Colchester had an

---

1. Decker characterizes Fish's behavior toward Lafond as "repeated harassing and constitutionally assaultive behavior." Pl.'s Statement of Undisputed Facts, ¶ 1 (Paper 55).

2. Although Decker does not set forth a jurisdictional basis in his complaint, the language of the complaint supports the inference that § 1983 is the jurisdictional basis for his federal due process claims.

official policy or custom of permitting or encouraging its police officers (or any of its employees for that matter) to violate its citizens' federal rights. While a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials, such as the persistent failure to discipline subordinates who violate persons' civil rights, *see Zahra*, 48 F.3d at 685 (internal citations omitted), the evidence presented here is grossly insufficient to justify any such inference. The only evidence Decker has offered in support of his claims against Colchester is the testimony of an acquaintance who, several years ago, made two complaints about a single police officer who allegedly pulled him over repeatedly in an effort to harass him. Such evidence cannot support an inference that Colchester had a policy or custom which directly caused the alleged constitutional violations in this case. Colchester's motion for summary judgment with respect to Decker's federal law claims is therefore GRANTED.

## 2. Decker's state law claims

■■ To the extent that Decker's complaint encompasses state law claims against Colchester in addition to his § 1983 claim, those claims are defeated by the defense of municipal immunity. In Vermont, as in most jurisdictions, municipalities can only be held liable for injuries arising from their proprietary, as opposed to governmental, duties. *Atkinson v. Town of Westmore*, 38 F.Supp.2d 338, 341 (D.Vt.1999) (citing *Hillerby v. Town of Colchester*, 167 Vt. 270, 706 A.2d 446, 447 (1997)). While the proprietary/governmental distinction has often been criticized as very difficult to apply, *see, e.g., Indian Towing Co. v. United States*, 350

---

3. Although there appears to be no controlling authority in this jurisdiction directly on the issue of whether law enforcement is a governmental, as opposed to proprietary, function of a municipality, other jurisdictions addressing this issue have universally found that it is. *See, e.g., Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C.Cir. 1997) (characterizing "law enforcement" as

U.S. 61, 65, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Clain v. City of Burlington*, 202 F.2d 532, 533 (2d Cir.1953), there can be little question that police work is a quintessential governmental function. *See Clain*, 202 F.2d at 533 (categorizing "protection against violence and fire" as nonproprietary (i.e., governmental) functions of municipalities); *see also* 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53.51 (3d ed. 1993) ("For those jurisdictions subscribing to the dichotomy between governmental and proprietary functions it is firmly established that the operation of a police department is a governmental function, and that acts or omissions [of the police] ordinarily do not give rise to liability on the part of the municipality.").[3] As such, municipalities are immune from state law claims arising from injuries caused by the operation of their police departments.

Thus, to the extent that Decker has asserted state law claims against the Town of Colchester because of the actions of its police officers, such claims cannot survive Colchester's motion for summary judgment, and that motion is GRANTED.

## C. The individual defendants' motions for summary judgment

### 1. Decker's trespass claims

■ One of the claims upon which Decker bases this lawsuit is that Defendant Fish trespassed upon the premises of 16 Heritage Drive in Colchester, Vermont, on August 2 and August 9, 1997. Decker's trespass claims, however, must fail, because he does not have standing to assert any such claims. Therefore, Fish and

---

"a 'quintessential' governmental function"); *Dorsey v. City of Detroit*, 858 F.2d 338, 344–45 (6th Cir.1988) (asserting that the provision of police protection by a city is a "quintessentially governmental activity"); *Webster v. City of Houston*, 689 F.2d 1220, 1233 (5th Cir.1982) (referring to the operation of a police force as a "paradigmatic governmental activity").

Hill's motions for summary judgment on these claims are GRANTED.

■ In order for a party to assert a trespass claim in Vermont, that party must have either legal title or the right to immediate possession of the real property upon which the trespass allegedly occurred. *See Dessureau v. Maurice Memorials, Inc.*, 132 Vt. 350, 351, 318 A.2d 652, 653 (1974). Decker, as a guest at a party in the house where this alleged trespass took place, had neither. Thus, he has no standing to assert a trespass claim. Therefore, to the extent Decker's lawsuit is based on a theory of trespass, the defendants' motions for summary judgment are GRANTED.

## 2. Decker's claims of false arrest and false imprisonment

■ Decker has also asserted that he was falsely arrested and falsely imprisoned by the defendants. These claims, however, are barred by the complete defense of conviction.

■ The common law rule is that in actions asserting false arrest or imprisonment, a plaintiff can never recover if he was convicted of the offense for which he was arrested. *See Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986). The conviction serves as conclusive evidence of the good faith and reasonableness of the officer's decision to arrest the plaintiff, *see id.* at 388, and is viewed as establishing probable cause for the arrest, *see id.* at 387.

Here, Decker was ultimately convicted of hindering arrest after a two-day jury trial. Therefore, his claims for false arrest and imprisonment are barred, and summary judgment on those claims must be GRANTED for the defendants.

## 3. Decker's assault or excessive force claims stemming from the August 2, 1997, incident

■ Defendants contend that even if everything Decker describes about the events on August 2, 1997 (the first day that Officer Fish encountered the defendant in the basement of 16 Heritage Drive) is accurate, none of the actions allegedly taken by Fish could be construed as an assault or use of excessive force, and thus that any claims Decker may have stemming from this incident should be dismissed. This Court agrees.

Decker claims that on August 2, 1997, Officer Fish entered Brian Lafond's basement where he encountered Decker. When Decker asked him what he was doing there and to leave, Decker alleges that Fish asked him to "come upstairs and settle this outside." Tr. at 84–85 (Paper 45, Ex. B). According to the plaintiff, Decker simply ignored this request, and Officer Fish left without further incident.

■ Even assuming that this account of the events of August 2, 1997, is complete and accurate, nothing in this recitation rises to the level of an assault or excessive use of force. "At common law, the civil tort of assault is defined as 'any gesture or threat of violence exhibiting an attention [sic] to assault, with the means of carrying that threat into effect…unless immediate contact is impossible.'" *Billado v. Parry*, 937 F.Supp. 337, 343 (D.Vt.1996) (quoting *Bishop v. Ranney*, 59 Vt. 316, 318, 7 A. 820 (1887)).

Decker suggests that Officer Fish, in making the alleged request that they "settle things outside," was threatening a "harmful or offensive contact" with the plaintiff. This characterization is farfetched, especially in light of the fact that Decker had the option to simply refuse to accompany the Officer, and in fact did so, without further incident. Thus, the Court declines to read Officer Fish's alleged comments as an assault, and defendants are entitled to summary judgment on Decker's assault claim.

Furthermore, because Decker does not even allege that Officer Fish used any force whatsoever on August 2, 1997, any excessive force claim that he might have

stemming from the incidents on that date must fail as well.

## 4. Qualified Immunity

 With respect to Decker's excessive force, assault and battery claims stemming from the incidents on August 9, 1997, defendants Fish and Hill raise the defense of qualified immunity. "Qualified immunity attaches to those cases in which (1) a public official acted within the scope of his or her duties; (2) the public official's alleged improper conduct was discretionary; and (3) the public official acted in good faith." *Washington v. St. Albans Police Dep't*, 30 F.Supp.2d 455, 458–59 (D.Vt.1998) (citing *Napolitano v. Flynn*, 949 F.2d 617, 622 (2d Cir.1991)). "A defense of qualified immunity is established if '(a) the defendants' action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Id.* at 459 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.1998)).

In this case, there are material fact issues in dispute with regard to both prongs of the qualified immunity inquiry which preclude granting summary judgment to the defendants. With regard to the first prong, i.e., whether qualified immunity attaches at all, it is clear that Officers Fish and Hill meet parts (1) and (2): they were acting within the scope of their duties as police officers, and their actions were discretionary. But the issue of whether they were acting in good faith may depend on whose account of the events is to be believed.[4] Similarly, with regard to the second prong of the qualified immunity inquiry, in which the Court must determine whether the defense has been established,

there are material facts in dispute which preclude a finding for the defendants. If we take the evidence in the light most favorable to Decker, a reasonable jury could find that the officers' actions violated clearly established law, or that it was not objectively reasonable for the defendants to believe that their actions did not violate such law. Thus, summary judgment for the defendants on Decker's excessive force, assault and battery claims with regard to the events of August 9, 1997, must be DENIED.

## D. The Defendants' Joint Cross–Motion to Dismiss or Render a Default Judgment

On August 4, 2000, the defendants in this case filed a motion to dismiss or render a default judgment against Decker because of his alleged failure to serve his opposition to the defendants' (both Colchester's and the individual defendants') motions for summary judgment. Because the Court hereby grants Colchester's motion for summary judgment, thereby releasing it as a defendant to this lawsuit, Colchester's motion to dismiss or render a default judgment is DENIED as moot. The individual defendants' motion to dismiss or render a default judgment, however, is DENIED on the merits.

 The defendants contend that Decker's opposition to the individual defendants' motion for summary judgment was not timely filed. However, because there is no certificate of service in the court's record accompanying the individual defendants' motion for summary judgment, it is not clear from the record how or when the motion was served on Decker. According to the court's file, the individual

---

4. For example, Decker asserts that all he did was ask the Officers why they were arresting Dewey, and that they then attacked him, maced him repeatedly, and continued to brutalize him even after he was in handcuffs. The officers, on the other hand, contend that Decker stood in their way, thereby hindering their arrest of Dewey, and that all they did was try to arrest him, and only maced him briefly one time in order to get him to submit because he was resisting. These very different accounts obviously would lead to different conclusions on the qualified immunity issue. But because this issue arises on a motion for summary judgment by the defendants, we must construe the facts in the light most favorable to the plaintiff, and deny their motion.

defendants' motion for summary judgment was dated June 30, 2000, and filed on July 5, 2000. Decker's opposition was filed on August 3, 2000.

Under Local Rule 7.1(c)(2), opposition to a motion for summary judgment must be filed no more than 30 days after the motion is served. Assuming that the defendants served their motion by mail, Decker would have had three additional days to reply under Federal Rule of Civil Procedure 6(e). Because the date of service of the motion is unavailable and because even by the defendants' count, plaintiff's opposition was filed only one day late, the Court will accept Decker's opposition as timely filed and DENY defendants' motion to dismiss or render a default judgment.

### E. Decker's motion to reconsider

■ On June 14, 2000, in a written order, this Court granted defendants' motion to exclude the testimony of Decker's expert witnesses, because of the inadequacy of the expert reports that Decker submitted, pursuant to Fed.R.Civ.P. 26(a)(2)(B). On August 25, 2000, Decker moved that the Court reconsider its June 14 order, pointing to a recent decision by this court, *Kent v. Katz,* No. 2:99–CV–189 (D.Vt. Aug. 9, 2000), in which a plaintiff successfully opposed a motion to exclude the testimony of his physicians because they had failed to submit expert reports.[5]

Under Local Rule 7.2(b), "[a] motion to reconsider an order of the court, other than a motion governed by Fed.R.Civ.P. 59 or 60, must be filed within 10 days from the date of the order." Federal Rule of

Civil Procedure 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect."

■ Decker's motion to reconsider was filed two months and eleven days after the Court filed its order. Therefore it is untimely under Local Rule 7.2(b) unless it falls under one of the exceptions listed in Fed.R.Civ.P. 60(b)(1).[6] The only reason Decker offers for failing to raise the arguments in his motion to reconsider earlier on in these proceedings is his discovery of the decision in *Kent v. Katz. Kent,* however, involved a straightforward application of Federal Rule of Civil Procedure 26(a)(2) and its Advisory Committee's Notes, and under the law of this circuit, a party cannot, under Rule 60(b)(1), be relieved of the "burdens of a[ ] judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law." *Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986). Therefore, Decker's motion to reconsider must be DENIED.[7]

### III. Conclusion

Wherefore, the Court rules as follows:

Defendant Colchester's motion for summary judgment is **GRANTED;**

Defendants Fish and Hill's motion for summary judgment is **GRANTED** in part and **DENIED** in part;

---

5. The plaintiff in *Kent* argued that Rule 26 does not require treating physicians to file expert reports because they have not been retained for the purposes of litigation and because their opinions were developed in the course of treatment. *See id.,* slip op. at 1–2.

6. Although Decker's motion to reconsider fails to even mention Local Rule 7.2(b) or Fed.R.Civ.P. 60(b)(1), the Court will construe Decker's motion to reconsider as a 60(b)(1) motion for excusable neglect.

7. It should be noted that in denying Decker's motion to reconsider the exclusion of the testimony of Decker's expert witnesses, the Court does not address the issue of whether Decker's treating physicians can be called as lay witnesses. The original order from which Decker now seeks relief dealt with the issue of expert testimony, and his motion to reconsider has provided the Court no reason to reopen its original decision on that matter. No motion has been made, however, by either party with respect to the introduction of lay testimony by Decker's treating physicians.

Defendant Colchester's motion to dismiss or to render a default judgment is **DENIED**;

Defendant Fish and Hill's motion to dismiss or to render a default judgment is **DENIED**; and

Plaintiff's motion to reconsider is **DENIED**.